STATE OF NORTH CAROLINA v. WALTER DOUGLAS LONG

No. 788SC206

(Filed 29 August 1978)

1. **Searches and Seizures § 43— violations of Criminal Procedure Act not substantial—seized evidence not suppressed**

     Even if a search of defendant violated various provisions of G.S. Chapter 15A, such violations did not constitute grounds for exclusion of the evidence seized since the violations were not substantial, as exclusion of evidence seized by the investigators of the U. S. Air Force on Seymour Johnson Air Force Base would not in any way deter similar searches and seizures in the future.

2. **Searches and Seizures § 20; Army and Navy  § 1— search warrant issued by commanding officer of military base—oath or affirmation not required**

     Commanding officers of military bases qualify as neutral and detached magistrates for the purpose of determining probable cause to issue search warrants, and searches and seizures made pursuant to authority issued by the commanding officer of a military installation upon probable cause, even though not supported by oath or affirmation, are valid and constitutional when the search is made of property in the possession or under the control of a person under the command of the issuing officer.

3. **Searches and Seizures § 32— search warrant for contraband in residence—weapons frisk of those present proper**

    A limited "frisk" or search for weapons is reasonable and may be constitutionally made of all individuals present in a private residence when the residence is searched pursuant to a valid search warrant based upon probable cause to believe that the residence is a place in which heroin and other controlled substances are bought and sold and that such contraband is then present; an officer's reaching into defendant's boot, which was perhaps the most obvious place a weapon would have been concealed, in no way transformed the "frisk" of defendant for weapons into a complete search for contraband.

APPEAL by the State from *Fountain, Judge.* Order entered 6 December 1977 in Superior Court, WAYNE County. Heard in the Court of Appeals 22 June 1978.

The defendant was indicted for the felony of possession of the controlled substance heroin with the intent to sell. The defendant filed a written motion to suppress certain physical evidence obtained as the result of a search and seizure. After a hearing on the motion, the trial court ordered the evidence in question suppressed. From this order, the State appealed.

The State's evidence at the hearing on the motion to suppress tended to show that Kenneth Walker, a member of and criminal investigator for the United States Air Force Office of Special Investigations at Seymour Johnson Air Force Base in Wayne County, North Carolina, received information from a confidential informant on the morning of 19 May 1977. The informant stated that he had seen large amounts of marijuana at the home of Air Force Sergeant Samuel Britt. Britt's home was in government housing on the base. The informant also related that he had seen Britt and his wife use and sell both heroin and marijuana in the home. The informant also gave specific details as to the amounts of heroin and marijuana he had seen in the home as well as detailed descriptions of their wrappings and location within the home.

At approximately 5:00 p.m. on 19 May 1977, Investigator Walker sent the informant to the home in an attempt to have him purchase narcotics. As a result of this visit, the informer told Walker he had observed a packet of cocaine on the living room table in the home. The informant attempted to purchase the cocaine, but Britt told him it was for his own personal use. Britt

then told the informant to come back later that night, and he would sell the informant drugs.

After the informant related this information to Walker and other Air Force investigators, the Britt home was placed under surveillance. Numerous openings and closings of the doors to the home were observed, and three unknown males were seen going into the home.

Between 10:00 p.m. and 10:20 p.m. on 19 May 1977, Air Force investigators related all information in their possession to Colonel James S. Brimm, the commanding officer of Seymour Johnson Air Force Base. The information related to Colonel Brimm by the investigators included all the information previously set forth herein. The investigators related the information to Colonel Brimm verbally and without being placed under oath. Acting pursuant to his authority as commanding officer of Seymour Johnson Air Force Base, Colonel Brimm then signed an "Authority to Search and Seize" directing the officers to search the home, Britt and his wife, and all other military personnel present.

At approximately 10:20 p.m. Investigator Walker sent the informant back to the home, which was then under surveillance by Walker and others. Walker observed the informant go to the home and leave in about one minute without going inside. Other Air Force investigators, together with county officers, then arrived and a search of the home was conducted. Investigator Walker went to the front door and attempted to enter, but found the door had been nailed shut. He then went to the rear of the home and entered. Upon entering the investigators found Sergeant Britt in the bathroom and the defendant, Walter Douglas Long, came out of a back bedroom. They were both directed to go into the living room of the home. One of the individuals present appeared to be under the influence of drugs. The investigators observed that Mrs. Britt "appeared hysterical and was jumping around."

The investigators testified that they then conducted a "pat down" of the defendant and others to determine whether they were armed. They further testified that such a pat down was normal procedure conducted for their own safety. Investigator Walker testified that the informant had told him that Sergeant Britt had previously inquired about obtaining a weapon.

Investigator Walker conducted the "pat down" of the defendant by running his hands down the defendant's body and in his boots. He testified that he ran his hands around the inside of the defendant's left boot "all the way to his foot." Upon placing his hand in the defendant's left boot, he felt a sharp pointed object which he thought was a knife. He then pulled the object out and determined it was a spoon wrapped in plastic with eight small packets of a powder type substance, three white Q-tips and one needle. He did not remove anything else from the defendant at this time. He then asked the defendant for his identification, and the defendant produced a driver's license and stated that he was a civilian. Investigator Walker then turned the defendant over to the county law enforcement officers present. The home was then searched pursuant to the "Authority to Search and Seize" issued by Colonel Brimm. Various controlled substances were found in the bedroom and other areas.

*Attorney General Edmisten, by Assistant Attorney General Donald W. Grimes, for the State.*

*Barnes, Braswell & Haithcock, P.A., by Michael A. Ellis and R. Gene Braswell, for defendant appellee.*

MITCHELL, Judge.

The State assigns as error the order of the trial court excluding the evidence seized from the defendant as being the fruit of a "frisk" in violation of G.S. 15A-255. The defendant, however, contends that the Air Force investigator exceeded the authority to search embodied in that statute, as the "frisk" went beyond "an external patting of the clothing of those present" when the investigator reached inside the defendant's boot. The defendant additionally contends that the search of the defendant was not authorized by G.S. 15A-256 as the "Authority to Search and Seize" issued by Colonel Brimm was issued upon an oral application in violation of G.S. 15A-244 and was not issued by an official authorized under G.S. 15A-243. The defendant additionally contends that the investigators violated G.S. 15A-256 by searching him prior to an unsuccessful search of the premises.

[1] Assuming arguendo that the defendant is correct as to each of his contentions regarding violations of G.S. Chapter 15A, we do

not find such violations would constitute grounds for exclusion of the evidence seized. Our statutes only require that evidence obtained in violation of G.S. Chapter 15A be suppressed if it is obtained as a result of a "substantial" violation of the provisions of the Chapter. G.S. 15A-974(2). One of the critical circumstances to be considered in determining whether the violation is "substantial" is the extent to which exclusion will deter similar violations in the future. Here, we find that exclusion of the evidence seized by the investigators of the United States Air Force on Seymour Johnson Air Force Base would not in any way deter similar searches and seizures in the future. Air Force and other military authorities would and should continue to exercise the powers granted them by the Congress and President of the United States to search for and seize evidence of criminal violations on military bases. Our holding here would have no tendency to deter such conduct in the future, and any violation of G.S. Chapter 15A occasioned by such searches on military bases pursuant to proper military authority will not be deemed "substantial" within the meaning of G.S. 15A-974.

Additionally, we think that "Our Federalism" requires a sensitivity to the legitimate interests of the governments of both the State and the United States and dictates that neither carry out its functions so as to unduly interefere with the legitimate activities of the other. *See Younger v. Harris*, 401 U.S. 37, 27 L.Ed. 2d 669, 91 S.Ct. 746 (1971). *But see* McMillan, James B., *Abstention—The Judiciary's Self-Inflicted Wound*, 56 N.C.L. Rev. 527 (1978). Our construction of G.S. 15A-974 in such manner as to hold the actions of members of the United States Air Force not to constitute "substantial" violations of our statutes, if they constitute violations of any type, has the added benefit of avoiding such undue conflicts among the components of "Our Federalism."

[2]   The defendant also contends that the "Authority to Search and Seize" issued by the commanding officer of Seymour Johnson Air Force Base was unconsitutionally issued in violation of his rights under the Fourth Amendment to the Constitution of the United States as it was not issued upon probable cause as found by a neutral and detached magistrate. In support of this contention the defendant refers us to the cases of *Shadwick v. City of Tampa*, 407 U.S. 345, 32 L.Ed. 2d 783, 92 S.Ct. 2119 (1972), and *Johnson v. United States*, 333 U.S. 10, 92 L.Ed. 436, 68 S.Ct. 367

(1948). We do not agree. Commanding officers of military bases qualify as neutral and detached magistrates for the purpose of determining probable cause. *United States v. Banks,* 539 F. 2d 14 (9th Cir.), *cert. denied,* 429 U.S. 1024, 50 L.Ed. 2d 626, 97 S.Ct. 644 (1976). Searches and seizures made purusant to authority issued by the commanding officer of a military installation upon probable cause, even though not supported by oath or affirmation, are valid and constitutional, when the search is made of property in the possession or under the control of a person under the command of the issuing officer. *Wallis v. O'Kier,* 491 F. 2d 1323 (10th Cir.), *cert. denied,* 419 U.S. 901, 42 L.Ed. 2d 147, 95 S.Ct. 185 (1974); *United States v. Grisby,* 335 F. 2d 652 (4th Cir. 1964). Here, the search of Sergeant Britt's home on Seymour Johnson Air Force Base pursuant to the authority of the commanding officer was a constitutionally valid search. We find that, in the constitutional sense, the search by military authorities, pursuant to their commanding officer's "Authority to Search and Seize," resulting in the search of the Britt home and of the defendant must be treated as though conducted pursuant to a valid and lawful search warrant.

[3] Finally, we are called upon to determine whether the search of the defendant during the course of the lawful search of the Britt home otherwise violated the Fourth Amendment to the Constitution of the United States. We find it did not. Only those searches and seizures which are unreasonable are constitutionally prohibited. The limits of reasonableness placed upon searches are equally applicable to seizures, and whether a search and the resulting seizure are reasonable must be determined from the facts of the individual case. 11 Strong, N.C. Index 3d, Searches and Seizures, § 1, p. 485. Here, we find the search of the defendant in the Britt home on 19 May 1977 and the resulting seizure of contraband were reasonable and lawful.

Several courts have indicated that when, as here, a search is conducted pursuant to lawful authority based upon probable cause indicating the presence on the premises to be searched of a type of contraband easily hidden on the person, complete searches for contraband materials may be conducted upon all individuals present. *Samuel v. State,* 222 So. 2d 3 (Fla. 1969); *Willis v. State,* 122 Ga. App. 455, 177 S.E. 2d 487 (1970); *People v. Pugh,* 69 Ill. App. 2d 312, 217 N.E. 2d 557 (1966); *State v. Loudermilk,* 208 Kan.

893, 494 P. 2d 1174 (1972); *State v. De Simone*, 60 N.J. 319, 288 A. 2d 849 (1972); *Johnson v. State*, 440 S.W. 2d 308 (Tex. Crim. App. 1969). *See United States v. Johnson*, 475 F. 2d 977 (D.C. Cir. 1973); *Walker v. United States*, 327 F. 2d 597 (D.C. Cir. 1963); *State v. Saiz*, 106 Ariz. 352, 476 P. 2d 515 (1970). *But see State v. Carufel*, 263 A. 2d 686 (R.I. 1970), and cases referred to therein. We have previously held that complete searches of such individuals for contraband are reasonable and consitutional if conducted, pursuant to G.S. 15A-256, after a search of the premises and persons designated in the warrant fails to produce the items sought and specified in the warrant. *State v. Watlington*, 30 N.C. App. 101, 226 S.E. 2d 186, *appeal dismissed*, 290 N.C. 666, 228 S.E. 2d 457 (1976).

The facts presented by the present case, however, do not require that we determine whether complete searches of all individuals present in the Britt home for contraband materials would have been constitutional. Here, the investigators limited their search of the defendant to a "frisk" for weapons and did not conduct a complete search of the defendant's person. We do not feel that the act of reaching into the defendant's boot, which was perhaps the most obvious place a weapon would have been concealed, in any way transformed the "frisk" for weapons into a complete search for contraband. Rather, we find that a limited "frisk" or search for weapons is reasonable and may be constitutionally made of all individuals present in a private residence, when  the residence is searched pursuant to a valid search warrant based upon probable cause to believe that the residence is a place in which heroin and other controlled substances are bought and sold and that such contraband is then present.

In *Terry v. Ohio*, 392 U.S. 1, 20 L.Ed. 2d 889, 88 S.Ct. 1868 (1968), the Supreme Court of the United States held that, in order to authorize a search for weapons without a warrant, the officer conducting the search must be able to point to specific and articulable facts which, taken together with rational inferences therefrom, reasonably warrant the intrusion. In such instances, it is necessary to balance the need to search or seize against the invasion which the search or seizure entails. As the investigators in the present case searched the residence pursuant to authority issued upon a showing of probable cause to believe the residence contained contraband and was regularly used in the sale of such

contraband, the intrusion occasioned by the "frisk" of the defendant to determine whether he was armed and dangerous was reasonable and constitutional. Although such "frisks" do not technically constitute a so-called "stop and frisk" procedure, we find this to be one of those "carefully defined classes of cases" referred to in *Terry*, which make up an exception to the warrant requirement and that such searches are reasonable. Certainly, if an officer may, without the benefit of either a search warrant or arrest warrant stop individuals he has observed engaging in unusual conduct on a public street after concluding that they contemplate a crime and are armed, as in *Terry*, searches such as those presented by the present case are reasonable and, therefore, constitutional.

The defendant contends, however, that *Sibron v. New York*, 392 U.S. 40, 20 L.Ed. 2d 917, 88 S.Ct. 1889 (1968), is a limitation upon the holding of *Terry* and requires our holding the search in the present case unconstitutional. We do not agree. In *Sibron* the police officer searched the defendant in a public place for contraband. His search of the defendant was based solely upon having observed the defendant in the presence of various known narcotics addicts throughout the day. The arresting officer in that case did not suggest that he was in fear of bodily harm or that he searched Sibron in self-protection to find weapons. The holding and opinion in *Sibron* are, therefore, of no assistance in deciding the issues presented here.

Additionally, we do not find the opinion of the Supreme Court of the United States in *United States v. Di Re*, 332 U.S. 581, 92 L.Ed. 210, 68 S.Ct. 222 (1948), to be helpful in our analysis of the present case. There, on information that an informer was to buy counterfeit gasoline ration coupons from a certain individual at a named place, officers arrived and found a parked automobile occupied by its owner, from whom the informer had just purchased coupons, and a third person. Without the benefit of either a search warrant or an arrest warrant, the officers arrested the third person and took him to a police station, where a search of his clothing revealed an envelope containing coupons counterfeited in violation of federal law. The Court held that the mere presence of the third person in the parked automobile with its owner and the informer was not such as to indicate that he had committed the felony of knowingly possessing counterfeit

coupons. Therefore the arrest without an arrest warrant was unlawful. The search of the third person having been justified as a search incident to a lawful arrest without a warrant, the Court held that it must stand or fall upon the validity of the arrest and was also unlawful. We do not think the holding in *Di Re*, however, requires our holding the search in the present case unconstitutional. Although the Court in that case did, in *obiter dictum*, cast doubts upon the validity of a search for contraband conducted upon all persons found in a residence searched pursuant to a warrant, it in no way implied that a limited "frisk" for weapons, such as reaching into the top of an individual's boot, would be unreasonable and unconstitutional. Thus, we do not believe that the holding in *Di Re* is in any way controlling in the present case. *See Pennsylvania v. Mims*, 434 U.S. 106, 54 L.Ed. 2d 331, 98 S.Ct. 330 (1977).

Here the "frisk" of the defendant for weapons was strictly limited to the purpose of determining whether the defendant was armed. The Air Force investigators indicated that such "frisks" for weapons were their standard procedure in such situations. The testimony of these agents of the United States, which indicated they limited their search to a weapons "frisk," was further supported by the fact the limited "frisk" did not result in seizure from the defendant of any form of identification, or other item not subject to being mistaken for a weapon when felt during the "frisk." Rather, the defendant himself produced his identification to the investigators upon request after they had completed their search for weapons, which resulted in the discovery of a spoon and contraband easily mistaken for a weapon until pulled from the defendant's boot. We cannot say that a standard procedure, such as that employed here by the Air Force, calling for a limited search or "frisk" for weapons is unreasonable. Instead, we believe it to be authorized by the holding in *Terry*. In this regard, we cannot improve upon the statement of the Supreme Court of the United States that:

> [W]e cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the of-

In re Robinson

ficer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

*Terry v. Ohio,* 392 U.S. 1, 24, 20 L.Ed. 2d 889, 907-908, 88 S.Ct. 1868, 1881 (1968).

To hold the limited search for weapons conducted by the investigators in this case unreasonable or not justified by exigent circumstances would deny them just such powers to take necessary measures to determine whether those they are investigating at close range are carrying weapons and to neutralize threats of physical harm. We do not believe this result is required and must reverse the order of the trial court granting the defendant's motion to suppress and remand the case for further proceedings according to law.

Reversed and remanded.

Judges PARKER and HEDRICK concur.