STATE OF NORTH CAROLINA v. STERLING PAYTON HARRIS ALIAS DAVY RAY BOLDER

No. 8818SC1295

(Filed 3 October 1989)

1. **Searches and Seizures § 12— frisking of person at scene of drug arrest—search and seizure not unlawful**

A search of defendant and seizure of a gun from his person was not unlawful under the Fourth Amendment where it was based upon officers' reasonable suspicion that the occupants

STATE v. HARRIS

[95 N.C. App. 691 (1989)]

of a motel room were armed or within reach of weapons; officers knew the subject of their search warrant and knew he was wanted on drug related charges; officers knew there had been significant traffic in and out of the motel room and suspected it was related to drug dealing of some kind; at least two of the detectives involved believed that weapons would be found on or near persons in this type of drug situation based upon their previous experiences that weapons were found in at least 85% of similar situations; and the police officers were acting in a swiftly developing situation where it was mandatory for the safety of the officers and others that the room, people inside the room, and people in immediate proximity to the room be secured.

**2. Criminal Law § 75.7— question during frisking procedure—no custodial interrogation—Miranda warnings not required**

Defendant's statement to officers in response to their question during a frisking procedure that he had a gun in his pocket did not amount to an involuntary confession given in the absence of Miranda warnings, since the officers' question was prompted by a concern for the public safety and was not designed solely to elicit testimonial evidence from a suspect which would have required Miranda warnings.

APPEAL by defendant from *Helms (William H.), Judge.* Judgment entered 7 July 1988 in Superior Court, GUILFORD County. Heard in the Court of Appeals 23 August 1989.

Defendant was charged under G.S. 14-415.1 and 14-7.1 with one count each of felony possession of a firearm by a felon and as a habitual felon. Defendant's motion to suppress certain evidence pertaining to the charges was heard on 6 July 1988.

The State's evidence upon *voir dire* tended to show that on 8 April 1988 at approximately 12:05 a.m., Officer R. J. Tolley and Detective Gary Evers of the Greensboro Police Department obtained a search warrant authorizing a search of room 145 at the Howard Johnson Motel for an individual named Bernard Hobson, who had been observed entering that room.

After receiving the search warrant, Officer Tolley and Detective Evers and at least three other members of the Greensboro Police Department stationed themselves in the room directly opposite room 145, and decided they would enter room 145 the next

STATE v. HARRIS

[95 N.C. App. 691 (1989)]

time the door to that room opened. Approximately five minutes later, defendant opened the door to room 145 and attempted to exit. All the detectives except Officer Tolley and Detective Pearman entered room 145 to secure the room. Officer Tolley and Detective Pearman secured defendant and frisked him for weapons for safety reasons. The frisk occurred outside room 145 approximately two feet from the door.

Officer Tolley and Detective Pearman pushed defendant down to frisk him, and Detective Pearman held his knee in defendant's back. Prior to pushing defendant to the ground, Officer Tolley had her gun drawn but reholstered it when defendant was secured on the ground. Both Officer Tolley and Detective Pearman frisked defendant by patting him down beginning with defendant's shoulder area. Detective Pearman asked defendant if he had a weapon, and defendant answered, "yes," and told him that it was in his [defendant's] right coat pocket. The initial frisk did not include searching defendant's pockets. Defendant was arrested, handcuffed and taken into custody after the weapon was found. Detective Pearman stated that he would have completed his frisk of defendant even if defendant had not told him where to find the weapon.

Thereafter, Officer Tolley and Detective Pearman entered room 145 to assist in securing the other people in the room, including Bernard Hobson, the subject of the search warrant. Detective Evers and Officer Tolley then returned to the Magistrate's office to obtain an additional search warrant to search room 145 because detectives observed drugs and drug paraphernalia in plain view. The officers subsequently executed the search warrant.

Officer Tolley and Detectives Evers and Pearman testified at *voir dire* that based upon their past experiences as police officers, many subjects involved with drugs or dealing in drugs carry weapons. Detective Evers testified that Bernard Hobson was in fact being sought for drug charges.

Detectives Evers and Pearman stated that based upon their observation of room 145 and their knowledge that several persons were inside the room, including Bernard Hobson, they believed that drugs were either being used or sold. They further testified that they believed they would find weapons on the premises or on persons in room 145. They based their beliefs on their experiences that in 85 to 98 percent of the narcotics searches in which they participated, weapons were found on individuals or in close proximi-

**STATE v. HARRIS**

[95 N.C. App. 691 (1989)]

ty. The State's evidence further tended to show that it is standard police procedure to frisk individuals found on premises being searched for drugs.

Defendant testified that he had been handcuffed prior to telling Officer Tolley and Detective Pearman that he had a gun. He also stated that a police officer held a gun pointed at him during the entire frisk, and that he was "real scared." On cross-examination, defendant acknowledged his prior convictions for larceny and breaking and entering in 1980 and in 1983, and for possession of stolen goods in 1986.

Walter Scales, who was present during defendant's arrest on 8 April 1988 and who was also arrested with defendant, testified and corroborated defendant's testimony.

At the close of *voir dire*, the trial court entered an order which allowed the State to introduce into evidence the weapon found on defendant and defendant's statement that he had been carrying a weapon. In its order, the court made findings of fact consistent with the State's evidence.

Based upon the trial court's findings of facts, it concluded the following as a matter of law:

1. That Officers Tolley and Pearman were among a group of officers executing a warrant directing them to search the premises or to search premises not generally open to the public, and at that time it was reasonably necessary for them to detain the defendant so that the warrant could be served or executed without incident.

2. That Officers Tolley and Pearman reasonably believed that their safety required them to search defendant for a dangerous weapon by externally patting his clothes.

3. That at the time Officer Pearman asked the defendant if he had a weapon that the defendant was not under investigation by the police and he was not being interrogated by them; the question asked of the defendant did not seek to elicit a response from him that could be used at a subsequent trial of him but rather its purpose was to insure the safety of the officer executing the warrant.

4. That the defendant was being detained at the time that the pat-down search and question was asked of him and that the detention was reasonable in all aspects.

5. That Officer Pearman would have continued his pat-down search of the defendant even if he had not been told by the defendant that he did have a weapon. (T pp 65 and 66).

Defendant pleaded guilty to all charges on 7 July 1988 and was sentenced to 14 years in prison. From the order denying defendant's motion to suppress the evidence of his statement to police that he had a weapon and evidence of the weapon, defendant appeals.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General George W. Boylan, for the State.*

*Assistant Public Defender Frederick G. Lind for defendant-appellant.*

ORR, Judge.

[1] Although defendant entered a guilty plea to both charges for possession of a firearm by a felon and habitual felon, he preserved his appeal under G.S. 15A-979(b) from the denial of his motion to suppress the evidence of the seizure of the gun from his person and his statement to police officers that he had a gun. Defendant contends that the trial court erred in denying his motion to suppress because the gun and his statement were obtained through an unlawful search and seizure, thereby violating his rights under the Fourth and Fourteenth Amendments to the United States Constitution and under the North Carolina Constitution. We find no error.

In support of his argument, defendant cites *Ybarra v. Illinois*, 444 U.S. 85, 62 L.Ed.2d 238, 100 S.Ct. 338 (1979), *reh'g denied*, 444 U.S. 1049, 62 L.Ed.2d 737, 100 S.Ct. 741 (1980). In *Ybarra*, police officers searched Ybarra, a patron in a public tavern, pursuant to a search warrant issued to search the premises and the bartender named "Greg." The officers found drugs in Ybarra's pocket. The Supreme Court overturned Ybarra's conviction on the basis of absence of probable cause to search any patron, and stated that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Id.* at 91, 62 L.Ed.2d at 245, 100 S.Ct. at 342. The Court explained that the *Ybarra* search was unlawful because "[it] was not supported by a reasonable belief

that he was armed and presently dangerous." *Id.* at 92-93, 62 L.Ed.2d at 246, 100 S.Ct. at 343. In *Ybarra*, there was no suspicion that defendant Ybarra was anything more than a patron in a public place.

In the case *sub judice*, it is clear that the Greensboro police officers had "reasonable belief" that persons in room 145 may have been armed and dangerous. Detectives Evers and Pearman testified that based upon their professional experiences, weapons are found on persons or on the premises in at least 85 percent of the searches they conduct when drugs are involved. Moreover, they testified that they knew the subject of their search warrant was in room 145, the subject was wanted on drug related charges, and that there had been several persons entering and leaving room 145 on the night of 7 April 1988, which indicated to them that a drug transaction may have transpired.

We now turn to whether the search and seizure of defendant in the case before us was in fact lawful under the Fourth Amendment.

The Fourth Amendment allows reasonable searches and seizures based upon probable cause. In *Terry v. Ohio*, 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868 (1968), the Supreme Court made clear delineations between a "seizure" (arrest) and a "stop" and between a "frisk" and a "search." In *Terry*, the Court created a narrow exception to the probable cause requirement which allows a law enforcement officer, for his own protection and safety, to conduct a pat-down (or "frisk") to find weapons he reasonably believes or suspects are then in the possession of the person he "stopped." *Id.* The officer conducting the search must be able to articulate specific facts, which combined with rational inferences therefrom, reasonably warrant the intrusion. *Id.* at 27, 20 L.Ed.2d at 909, 88 S.Ct. at 1883.

The *Terry* exception was allowed based upon police necessity to act quickly to insure that the person stopped is not armed with a weapon that would be used against the police or others in close proximity. The scope of this exception confines itself to an intrusion reasonably designed to discover weapons or other items that could be used as weapons. *Id.* at 30, 20 L.Ed.2d at 911, 88 S.Ct. at 1884. The Court justified this by stating, "it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." *Id.* at 24, 20 L.Ed.2d at 908, 88 S.Ct. at 1881.

**STATE v. HARRIS**

[95 N.C. App. 691 (1989)]

Since *Terry*, there have been a number of cases testing the limits of *Terry*. *See Delaware v. Prouse*, 440 U.S. 648, 59 L.Ed.2d 660, 99 S.Ct. 1391 (1979), and *Michigan v. Summers*, 452 U.S. 692, 69 L.Ed.2d 340, 101 S.Ct. 2587 (1981). Many courts, in evaluating the reasonableness of a search and seizure or stop and frisk, have emphasized their need to consider "whether the police are acting in a swiftly developing situation and not indulge in unrealistic second-guessing." *United States v. Sharpe*, 470 U.S. 675, 686, 84 L.Ed.2d 605, 616, 105 S.Ct. 1568, 1575 (1985).

In this State, the courts have followed these principles to the letter, and have found that it is well within the law to conduct a frisk of a defendant for weapons when it is strictly limited to determination of whether that defendant was armed. *See State v. Peck*, 305 N.C. 734, 291 S.E.2d 637 (1982), and *State v. Long*, 37 N.C. App. 662, 246 S.E.2d 846, *disc. rev. denied and appeal dismissed*, 295 N.C. 736, 248 S.E.2d 866 (1978). Applying these rules of law to the case before us, we find that the Greensboro police officers acted in compliance with the standards articulated above.

First, the evidence tended to show that the officers and detectives involved had reasonable suspicion that the occupants of room 145 were armed or within reach of weapons. The officers knew the subject of the search warrant, Bernard Hobson, and knew he was wanted on drug-related charges. The police officers also knew that there had been significant traffic in and out of room 145, and they suspected the traffic was related to drug dealing of some kind.

Second, the evidence established that at least two of the detectives involved believed that weapons would be found on or near persons in this type of suspected drug situation, based upon their previous experiences that weapons were found in at least 85 percent of similar situations. These are exactly the kinds of "reasonably articulated facts combined with rational inferences therefrom" that *Terry* allows.

Third, the Greensboro police officers acted in a "swiftly developing situation." The door to room 145 opened, and it was mandatory for the officers' safety and others that the room, persons inside the room, and persons in immediate proximity to the room be secured to find Bernard Hobson. Although it may have been clear to at least one police officer that defendant was not Mr. Hobson,

it was not necessarily clear to Officer Tolley and Detective Pearman. Moreover, even if it had been clear to them that defendant was not Mr. Hobson, under *Terry* and other cases cited, they were within the limits of the law to stop and frisk defendant. They had no way of knowing whether defendant would leave the premises or perhaps turn around and start shooting.

[2] Defendant next argues that his statement to Officer Tolley and Detective Pearman was involuntary and therefore should be suppressed under *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602 (1966). We disagree.

In *New York v. Quarles*, 467 U.S. 649, 81 L.Ed.2d 550, 104 S.Ct. 2626 (1984), the Supreme Court made a public safety exception to the requirement that *Miranda* warnings be given before a suspect's answers may be admitted into evidence. In *Quarles*, a police officer apprehended and frisked a rape suspect. Upon discovering that the suspect wore an empty shoulder holster, the officer handcuffed the suspect and asked him where the gun was. The suspect responded, "[t]he gun is over there." *Id.* at 652, 81 L.Ed.2d at 554, 104 S.Ct. at 2629.

The Supreme Court stated that *Miranda* warnings are not required in a situation where "police officers ask questions reasonably prompted by a concern for the public safety." *Id.* at 656, 81 L.Ed.2d at 557, 104 S.Ct. at 2631.

In the case *sub judice*, we find that Detective Pearman's question to defendant falls squarely within the *Quarles* exception. Detective Pearman was frisking defendant when he asked the question. It was clearly a question "prompted by a concern for the public safety" and not a question protected by *Miranda*, one "designed solely to elicit testimonial evidence from a suspect." *Id.* at 658-59, 81 L.Ed.2d at 559, 104 S.Ct. at 2633.

For the reasons set forth above, we affirm.

Affirmed.

Chief Judge HEDRICK and Judge LEWIS concur.