STATE OF NORTH CAROLINA v. VINCENT ARTIS

No. COA95-1323

(Filed 2 July 1996)

**Searches and Seizures § 81 (NCI4th)— defendant in airport game room—warrantless search based on general suspicion—violation of Fourth Amendment—evidence not suppressed—error**

The trial court erred in denying defendant's motion to suppress crack cocaine seized from his pocket at an airport during an

investigatory stop and frisk where the officer had only a generalized suspicion of criminal activity, based upon defendant's presence in the airport game room which was a known area of drug activity, a bulge in defendant's pants pocket which the officer thought was either brass knuckles or the handle of a gun, and the fact that defendant had not yet passed through the airport's metal detectors, since there was no apparent need for quick action by the officer to insure that defendant was not armed with a weapon which would be used against him or others nearby.

**Am Jur 2d, Searches and Seizures §§ 51, 78.**

**Law enforcement officer's authority, under Federal Constitution's Fourth Amendment, to stop and briefly detain, and to conduct limited protective search of or "frisk," for investigative purposes, person suspected of criminal activity—Supreme Court cases. 104 L. Ed. 2d 1046.**

Appeal by defendant from judgment entered 25 May 1995 by Judge Howard R. Greeson, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 3 June 1996.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Robert G. Webb, for the State.*

*Public Defender Wallace C. Harrelson, by Assistant Public Defender Frederick G. Lind, for defendant.*

JOHNSON, Judge.

On 3 April 1995, a Guilford County grand jury indicted defendant Vincent Artis on one count of trafficking in a controlled substance (cocaine). Defendant later filed a pretrial motion to suppress physical evidence seized from his person. Following a *voir dire* hearing on 24 May 1995, the trial court denied defendant's motion. A jury subsequently found defendant guilty as charged, and the trial court sentenced defendant to a minimum of thirty-five (35) months imprisonment and a maximum of forty-two (42) months imprisonment. The trial court also imposed a $50,000.00 fine.

The following evidence was presented at trial: Detective J. E. Hoover of the Greensboro Police Department's Vice and Narcotics Unit testified that he was a part of a drug interdiction task force at the Piedmont Triad International Airport on 23 January 1995. On that

date, he observed defendant operating a basketball machine in the airport game room, a location which had a reputation for drug activity. Detective Hoover also testified that the game room was in a location before it was necessary for the public and passengers to pass through the airport's metal detectors positioned near the departure gates.

Detective Hoover was dressed in casual clothes when he approached defendant in the game room. He introduced himself as a police officer and displayed his badge and picture identification card to defendant. After defendant agreed to talk with him, Detective Hoover questioned him and learned that defendant intended to take a departing flight. At this point in Detective Hoover's testimony, defense counsel asked to approach the bench.

After a bench conference, the trial court sent the jury out of the courtroom. The State then began its *voir dire* examination of Detective Hoover. The detective described seeing a large crescent-shaped bulge in defendant's left front pocket on the date in question, which appeared to be either brass knuckles or a weapon's handgrip. Although Detective Hoover asked defendant several times if defendant was carrying any weapons or drugs, defendant responded each time by asking, "Why would I carry weapons or drugs?"

Detective Hoover then told defendant that he thought defendant was carrying a weapon in his left front pocket. He informed defendant that he wanted to pat the area down to satisfy himself that the object was not a weapon. As he made this statement, Detective Hoover reached for this area of defendant's person. Defendant, however, turned away from Detective Hoover and attempted to take a step backwards. The detective, placed his hand on the object as defendant stepped back, and captured it with his hand inside defendant's pants pocket as defendant continued stepping back. Because the object was hard and fit the curvature of his hand, Detective Hoover thought that it was brass knuckles.

Defendant attempted to reach into the pocket at that time, despite a request by Detective Hoover that he not do so. Detective Hoover then reached into defendant's pocket to get control of the suspected weapon. When the detective removed the object, it was a clear plastic bag which appeared to contain crack cocaine. He subsequently placed defendant under arrest.

The trial court then ordered that defendant's suppression motion be denied and that the seized evidence be admitted. Defendant appeals.

Defendant contends that the trial court erred in denying his motion to suppress. He argues that his rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 20 of the North Carolina Constitution were violated by the search and seizure. Defendant asserts that Detective Hoover "obviously did not see any bulge" because his shirt covered the top of the pocket in question, and that the detective's reason for searching him was a pretext. For the following reasons, we reverse the trial court's order which denied defendant's motion to suppress and remand for a new trial.

The Fourth Amendment to the United States Constitution, like Article I, Section 20 of our Constitution, permits reasonable searches and seizures based upon probable cause. *State v. Garner*, 331 N.C. 491, 417 S.E.2d 502 (1992). Notably, the Fourth Amendment is made applicable to the states through the Due Process Clause of the Fourteenth Amendment. *State v. Watkins*, 337 N.C. 437, 446 S.E.2d 67 (1994) (citing *Mapp v. Ohio*, 367 U.S. 643, 655, 6 L. Ed. 2d 1081, 1090 (1961)). In *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889 (1968), the Supreme Court created a narrow exception to the probable cause requirement which allows a police officer to "frisk" a person in order to find weapons which the officer reasonably believes or suspects are in the possession of the person stopped. *Id.* The rationale for this exception is the need for quick action by a police officer "to insure that the person stopped is not armed with a weapon that would be used against the police or others in close proximity." *State v. Harris*, 95 N.C. App. 691, 696, 384 S.E.2d 50, 53 (1989). However, the "brief investigative stop of an individual must be based on specific and articulable facts as well as inferences from those facts, viewing the circumstances surrounding the seizure through the eyes of a reasonable cautious police officer on the scene, guided by his experience and training." *State v. Allen*, 90 N.C. App. 15, 25, 367 S.E.2d 684, 689 (1988).

In its order denying defendant's suppression motion, the trial court made the following findings of fact:

4. In his experience Detective Hoover was aware of the reputation of the airport game room for drug activity and had personal

knowledge of several narcotics arrests having been made in and around the game room.

5. Hoover approached the Defendant in the game room and asked him questions about his destination and what he was doing after identifying himself as a police officer.

6. The Defendant responded that he was on his way out of the airport and was waiting for a friend to bring him his airline ticket.

7. The officer knew at that time that if the Defendant was on his way out that he had not gone past the metal detectors at the airport security checkpoints.

8. As Detective Hoover talked with the Defendant, he observed his clothing and also observed a bulge in [Defendant's] left front pants pocket which appeared to the officer in his experience to be a weapon. The shape of the bulge led Hoover to think the object was either brass knuckles or the handle of a gun.

9. After some conversation about the bulge, Detective Hoover attempted to pat down that area on the Defendant and the Defendant moved back to avoid same.

10. Hoover then grabbed the object and it had a crescent shape and was hard to the touch which caused him to think that it was brass knuckles.

11. After Hoover grabbed the object the Defendant attempted to get it himself at which point Hoover reached in the Defendant's pocket and retrieved the object.

12. The object was a clear plastic bag containing off-white hard material which appeared to the detective in his experience to be crack cocaine and was later determined by a lab analysis to be crack cocaine.

13. The Defendant was then arrested and a further search incident to said arrest yielded an airline ticket and other items of personal property from the person of the Defendant.

From these and other findings of fact, the trial court concluded that:

1. The officer had a right to grab what he believed to be a weapon in order to conduct a pat down search for safety purposes.

2. When the Defendant attempted to grab the object, the officer had a right to grab the object first to complete his limited search for safety reasons.

3. Any other items of property seized from the Defendant subsequent to that were seized incident to a lawful arrest.

While competent evidence in the record supports the findings of fact made by the trial court, we conclude that the facts relied upon by Officer Hoover and the rational inferences which he was entitled to draw from said facts were inadequate to support the trial court's conclusions of law. Officer Hoover had only a generalized suspicion, based upon defendant's presence in the airport game room—a bulge in defendant's pants pocket—and the fact that defendant had not yet passed through the airport's metal detectors. To infer from the bulge in defendant's pocket that he possessed a weapon because defendant would not have passed through the airport metal detectors was not reasonable.

Nor was there any apparent need for quick action by Officer Hoover to insure that defendant was not armed with a weapon that would be used against him or others nearby. When Detective Hoover approached defendant, defendant was merely operating a video game machine. A reasonably prudent officer in those circumstances would not have been warranted in the belief that his or her safety or that of others was in danger. Officer Hoover's subsequent actions did not comport with the exception created by *Terry*, and therefore, defendant's seizure was not legally justified.

Having determined that defendant's initial seizure was a violation of his Fourth Amendment right against unreasonable searches and seizures, the evidence seized as a result must be suppressed. *See* N.C. Gen. Stat. § 15A-974 (1988). Accordingly, the trial court's order denying defendant's motion to suppress the cocaine seized from his person is reversed, and the matter is remanded for a new trial.

New trial.

Judges WYNN and SMITH concur.