**STATE v. SMITH**

[222 N.C. App. 253 (2012)]

STATE OF NORTH CAROLINA v. CURTIS SMITH, JR.

No. COA11-1335

(Filed 7 August 2012)

**Search and Seizure—motion to suppress drugs—drug dog's positive alert to vehicle—no probable cause to search former passenger outside vehicle**

    The trial court did not err in a felony possession of cocaine case by granting defendant's motion to suppress the drugs seized. A drug dog's positive alert to a motor vehicle while defendant, a former passenger within the motor vehicle, was outside the vehicle did not constitute probable cause to search defendant's person without a search warrant.

    Appeal by State from order entered 2 June 2011 by Judge L. Todd Burke in Forsyth County Superior Court. Heard in the Court of Appeals 2 April 2012.

    *Attorney General Roy Cooper by Assistant Attorney General Derrick C. Mertz for the State.*

    *Appellate Defender Staples Hughes by Assistant Appellate Defender Constance E. Widenhouse for defendant-appellee.*

STEELMAN, Judge.

    A drug dog's positive alert at the front side driver's door of a motor vehicle does not give rise to probable cause to conduct a warrantless search of the person of a recent passenger.

## I. Factual and Procedural History

    On 11 September 2010 at 11:02 p.m., Corporal M.S. McDonald (Officer McDonald) of the Winston-Salem Police Department heard loud music emanating from a 1972 Chevrolet automobile in a gas station parking lot. Officer McDonald observed three persons standing outside the vehicle. The driver, Mr. Leach (Leach), stood at the rear of the vehicle, pumping gas, while Curtis Smith, Jr. (defendant) stood next to the right front passenger door, and Mr. McCray stood outside the rear passenger door. Officer McDonald approached Leach and informed him that the music was too loud. McCray apologized, reached into the vehicle, and lowered the volume. Officer McDonald requested a driver's license and vehicle registration.

At 11:12 p.m., Officer McDonald returned to his patrol car, requested an additional unit, and verified Leach's license and vehicle registration via his on-board computer. Officers M.L. Canup (Officer Canup) and Singletary (Officer Singletary) arrived and requested identification from the two passengers. Officer McDonald checked defendant's past criminal history through his computer and found "an extensive local record which included numerous drug offenses," including possession of marijuana in June 2010. Based upon the criminal histories of· Leach, McCray, and defendant, Officer McDonald requested the assistance of K-9 Officer T.M. Jones (Officer Jones). Officer McDonald cited Leach for a noise ordinance violation. While Officer McDonald was preparing the citation, McCray and Leach became verbally aggressive with the officers, and Officer Canup warned them about their conduct. Defendant remained calm during the entire incident. McCray left the gas station.

At 11:20 p.m., after preparing the citation, Officer McDonald returned Leach's license and registration and began to explain the citation. Officer Jones arrived with the drug dog at 11:22 p.m., while Officer McDonald was still explaining the citation to Leach. At 11:24 p.m., Officer McDonald finished explaining the citation. Officer McDonald asked Leach if he had anything illegal in his motor vehicle. Leach replied "no." Officer McDonald asked if he could search the motor vehicle. Leach responded that he was in a hurry, but the officers could look in through the windows. Officer McDonald had the drug dog sniff the exterior of the motor vehicle. Officer McDonald placed Leach and defendant at the rear of his patrol car. The dog alerted to a controlled substance at the driver's door.

Following this alert, Officer McDonald searched the vehicle and found no contraband other than an open container of alcohol in the rear seat area. Officer Jones advised Officer Canup to search Leach and defendant. Officer Canup searched defendant and found contraband. Defendant grabbed the cocaine and threw it across the police vehicle. On 18 April 2011, defendant was indicted for felony possession of cocaine and for resisting a public officer.

Defendant filed a motion to suppress evidence of the contraband found on his person. On 2 June 2011, the trial court granted defendant's motion to suppress, concluding that "there was no indicia of evidence as it relates to Mr. Smith regarding any reason why his Fourth Amendment rights would have been relinquished and he would have been subject to a search without a warrant."

The State appealed and certified, pursuant to N.C. Gen. Stat. § 15A-979(c) (2011), "that this appeal [was] not taken for the purpose of delay and that the evidence suppressed as a result of the Court's Order [was] essential to the prosecution of the case."

## II. Motion to Suppress

The State's only argument on appeal is that the trial court erred in granting defendant's motion to suppress. We disagree.

### A. Standard of Review

"The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *State v. Biber*, 365 N.C. 162, 167-68, 712 S.E.2d 874, 878 (2011). "However, when, as here, the trial court's findings of fact are not challenged on appeal, they are deemed to be supported by competent evidence and are binding on appeal." *Biber*, 365 N.C. at 168, 712 S.E.2d at 878. Conclusions of law are reviewed *de novo*. *Id.*

### B. Analysis

"The Fourth Amendment of the United States Constitution and Article I, Section 20 of the North Carolina Constitution prohibit unreasonable searches and seizures." *State v. Downing*, 169 N.C. App. 790, 794, 613 S.E.2d 35, 38 (2005). The same provisions "require the exclusion of evidence obtained by unreasonable searches and seizures." *State v. McLamb*, 186 N.C. App. 124, 125-26, 649 S.E.2d 902, 903 (2007).

The "touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *State v. Robinson*, 148 N.C. App. 422, 428, 560 S.E.2d 154, 158 (2002) (internal quotation marks omitted). "The Fourth Amendment allows reasonable searches and seizures based upon probable cause." *State v. Harris*, 95 N.C. App. 691, 696, 384 S.E.2d 50, 52 (1989).

"Probable cause has been defined as a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty." *State v. Yates*, 162 N.C. App. 118, 122, 589 S.E.2d 902, 904 (2004) (internal quotation marks omitted). "This Court has determined that probable

cause to search exists when a reasonable person acting in good faith could reasonably believe that a search of the defendant would reveal the controlled substances sought which would aid in his conviction." *State v. Pittman*, 111 N.C. App. 808, 813, 433 S.E.2d 822, 825 (1993) (internal quotation marks omitted).

We note that a sniff by a well-trained narcotics dog has been held not to be a search under the Fourth Amendment.

> The United States Supreme Court discussed the Fourth Amendment implications of a canine sniff in *United States v. Place*. 462 U.S. 696, 103 S.Ct. 2637, 77 L. Ed. 2d 110 (1983). There, the Court treated the sniff of a well-trained narcotics dog as *sui generis* because the sniff disclose[d] only the presence or absence of narcotics, a contraband item. *Id.* at 707, 103 S.Ct. 2637, 77 L. Ed. 2d at 121. As the United States Supreme Court explained in *Illinois v. Caballes*, since there is no legitimate interest in possessing contraband, a police officer's use of a well-trained narcotics dog that reveals only the possession of narcotics does not compromise any legitimate privacy interest and does not violate the Fourth Amendment. 543 U.S. 405, 408-09, 125 S.Ct. 834, 160 L. Ed. 2d 842, 847 (2005).

*State v. Washburn*, ____ N.C. App. ____, ____, 685 S.E.2d 555, 558 (2009) (internal quotation marks omitted) (alteration in original). We further note that the search of the motor vehicle following the alert by the drug dog was proper. *Id.* at 100, 685 S.E.2d at 560.

In the instant case, the sole issue is whether a drug dog's positive alert to a motor vehicle while defendant, a former passenger within the motor vehicle, was outside the vehicle constitutes probable cause to search defendant's person without a search warrant. The State argues that a positive drug dog alert on a motor vehicle provides "probable cause to search the vehicle and its recent occupants, including defendant, for the source of the odor." No North Carolina case so holds. This is a question of first impression for North Carolina.

### i.  State's Authorities

The State cites *U.S. v. Anchondo*, 156 F.3d 1043 (10th Cir. 1998); *State v. Riggs*, 328 N.C. 213, 400 S.E.2d 429 (1991); and *Maryland v. Pringle*, 540 U.S. 366 (2003), in support of its argument.

In *Anchondo*, a vehicle operated by defendant and occupied by a passenger were stopped at a checkpoint. *Anchondo*, 156 F.3d at 1044.

"While one border patrol agent asked the men routine questions, another agent walked a drug-sniffing canine around the exterior of the defendant's sedan." *Id.* The opinion does not indicate that defendant was inside or outside of the motor vehicle during the dog sniff. The Tenth Circuit Court of Appeals held that the dog's alert provided the probable cause necessary to arrest defendant. *Anchondo,* 156 F.3d at 1045. The decision in *Anchondo* has been held to stand for the proposition that a positive alert given by a drug dog followed by a negative search of the vehicle results in probable cause to search the driver of the vehicle. *Whitehead v. Com.,* 278 Va. 300, 316, 683 S.E.2d 299, 315 (2009) (citing *Anchondo,* 156 F.3d at 1045). However, *Anchando* can be distinguished from the instant case in that in *Anchando* there was no indication whether defendant was inside the motor vehicle when the drug dog made the positive alert. Further, the positive alert was made on defendant's own motor vehicle, which is distinguishable from the instant case, in where defendant was merely a passenger.

In *Riggs,* the North Carolina Supreme Court upheld a warrant to search defendant's residence even though "there was no direct evidence of the presence of contraband within its walls." *Riggs,* 328 N.C. at 220, 400 S.E.2d at 434. Our Supreme Court noted the Fourth Amendment's "strong preference for searches conducted pursuant to a warrant[,]" and upheld the search. *Riggs,* 328 N.C. at 222, 400 S.E.2d at 434. The State cites *Riggs* for the proposition that direct evidence was not necessary for a probable cause determination. However, *Riggs* is distinguishable from the instant case, which involves a warrantless search.

In *Pringle,* defendant was the front seat passenger in a vehicle that was stopped for speeding. *Pringle,* 540 U.S. at 367-68, 157 L. Ed. 2d. at 773. The operator consented to a search of the motor vehicle, and cocaine was found. *Pringle,* 540 U.S. at 368, 157 L. Ed. 2d at 774. The question on appeal was whether the officer had probable cause to believe that defendant committed the crimes of "possession with intent to distribute cocaine and possession of cocaine." *Pringle,* 540 U.S. at 369-70, 157 L. Ed. 2d at 774-75. The Supreme Court held that it was a reasonable inference "from these facts that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine." *Pringle,* 540 U.S. at 372, 157 L. Ed. 2d at 776 The State cites *Pringle* for its analysis distinguishing *U.S. v. Di Re,* 332 U.S. 581, 92 L. Ed. 2d 210 (1948), and *Ybarra v. Illinois,* 444 U.S. 85, 62 L. Ed. 2d 238 (1979). *Pringle* is also distinguishable from the

instant case, where the search at issue was a non-consensual search of a person rather than a consent search of a motor vehicle.

### ii. Defendant's Authorities

Defendant cites *U.S. v. Di Re*, 332 U.S. 581, 92 L. Ed. 2d 210 (1948); *Ybarra v. Illinois*, 444 U.S. 85, 62 L. Ed. 2d 238 (1979); and *State v. Anderson*, 136 P.3d 406 (Ka. 2006) as being controlling in this case.

In *Di Re*, an informant advised that Buttitta intended to sell counterfeit gasoline ration coupons at a certain location. An investigator found Buttitta's car at that location. The informant, Buttitta, and defendant were in the car. The informant had two counterfeit coupons that he had obtained from Buttitta. All three persons were taken into custody. At the police station, defendant "complied with a direction to put the contents of his pockets on a table," which included two counterfeit coupons. *Di Re*, 332 U.S. at 583, 92 L. Ed. 2d at 214. When defendant was booked and thoroughly searched, one hundred counterfeit coupons were discovered on his person.

"The Court held that the mere presence of the third person in the parked automobile with its owner and the informer was not such as to indicate that he had committed the felony of knowingly possessing counterfeit coupons." *State v. Long*, 37 N.C. App. 662, 669-70, 246 S.E.2d 846, 852 (1978). "Therefore, the arrest without an arrest warrant was unlawful. The search of the third person having been justified as a search incident to a lawful arrest without a warrant, the Court held that it must stand or fall upon the validity of the arrest and was also unlawful." *Long*, 37 N.C. App. at 670, 246 S.E.2d at 852. The Supreme Court declined to expand *Carroll v. United States*, 267 U.S. 132, 69 L. Ed. 543 (1924), to permit warrantless searches of persons incident to the search of a vehicle based on "mere presence in a suspected car[.]" *Di Re*, 332 U.S. at 587, 92 L. Ed. 2d at 216.

In *Ybarra*, "police officers searched Ybarra, a patron in a public tavern, pursuant to a search warrant issued to search the premises and the bartender named 'Greg.' The officers found drugs in Ybarra's pocket." *Harris*, 95 N.C. App. at 695, 384 S.E.2d at 52. "The Supreme Court overturned Ybarra's conviction on the basis of absence of probable cause to search any patron, and stated that 'a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person.' " *Id.* (citing *Ybarra*, 444 U.S. at 92-93, 62 L. Ed. 2d at 246).

*United States v. Di Re,* 332 U.S. 581, 92 L. Ed. 210, 68 S.Ct. 222 (1948), held that probable cause to search a car did not justify a body search of a passenger. And *Ybarra v. Illinois,* 444 U.S. 85, 62 L. Ed. 2d 238, 100 S.Ct. 338 (1979), held that a search warrant for a tavern and its bartender did not permit body searches of all the bar's patrons. These cases turned on the unique, significantly heightened protection afforded against searches of one's person.

*Wyoming v. Houghton,* 526 U.S. 295, 303, 143 L. Ed. 2d. 408, 417 (1999).

In *Anderson,* defendant was stopped for traffic violations. *Anderson,* 136 P.3d at 408. The officers knew that the defendant and his passenger were gang members. *Id.* When the passenger exited the vehicle, an officer saw a plastic bag of marijuana sticking out of the passenger's shoe. *Anderson,* 136 P.3d at 409. Officers arrested the passenger and found pills and $1,300 in cash on his person. *Id.* While defendant was outside the vehicle, a drug dog alerted on the vehicle. *Anderson,* 136 P.3d at 409. Officers searched the vehicle and found no drugs. *Id.* During the subsequent arrest of defendant, officers found drugs on defendant. *Id.*

The issue presented to the Supreme Court of Kansas is similar to the case *sub judice.* In *Anderson,* the State argued that the officers had probable cause to arrest defendant after the drug dog alerted and a search of the vehicle yielded no drugs. *Anderson,* 136 P.3d at 412. "The State wants us to conclude that additional drugs had to be *somewhere* and that the somewhere was on Anderson's person[.]" *Anderson,* 136 P.3d at 412 (emphasis in original).

The Court noted that only one other court endorsed *Anchondo*'s approach. *Anderson,* 136 P.3d at 415 (citing *State v. Voichahoske,* 709 N.W.2d 659 (Neb. 2006)). In *Voichahoske,* in contrast to *Anderson* and the instant case, defendant was inside the vehicle while the drug dog sniffed the vehicle. *Voichahoske,* 709 N.W.2d at 670. The Court also noted that the Court of Appeals of Idaho had rejected *Anchondo.* *Anderson,* 136 P.3d at 415 (citing *State v. Gibson,* 108 P.3d 424 (*Id.* 2005)). The Supreme Court of Kansas concluded that "adherence to *Anchondo* would be unwise, particularly on the facts of this case." *Anderson,* 136 P.3d at 415. "While we are aware that Tenth Circuit precedent may be persuasive, this court is not bound to follow it." *Id.*

We also note that several other state courts have declined to adopt the holding of *Anchondo,* when confronted with similar facts. *See State v. Wallace* (2002), 372 Md. 137, 155–157 (drug dog alerted on

car containing defendant-passenger and others; defendant removed from car and searched; cocaine found; arrest followed; court held that the dog's alert on car did not give officers probable cause to search passengers); *People v. Fondia* (2000), 317 Ill.App.3d 966, 969 (drug dog alerted on car containing defendant; officer removed defendant from car, searched him, found drug paraphernalia; arrested him; court holds that dog's alert on exterior of car does not, without more, provide probable cause to search car's occupants).

### iii.  Whitehead v. Commonwealth

Additional authority is found in the case of *Whitehead v. Commonwealth*, 278 Va. 300, 683 S.E.2d 299 (2009). In that case, Whitehead was the right rear passenger in a motor vehicle that was stopped for a traffic violation. While the passengers remained inside the vehicle, the officer led his drug dog around the vehicle. At the driver's door, the dog made a positive alert for drugs. When the search of the vehicle revealed no contraband, the officers proceeded to search the occupants and the driver. Nothing was found until the search of the final occupant, Whitehead, revealed drugs on his person. *Id.*, 278 Va. at 303-04, 683 S.E.2d at 300.

The Virginia Supreme Court held absent some additional incriminating factors, a positive canine alert as to a motor vehicle on its own cannot establish "probable cause sufficiently particularized as to Whitehead to allow the search of his person." *Id.*, 278 Va. at 314, 683 S.E.2d at 305 (reversing decision of the Virginia Court of Appeals). The Court's analysis was based upon several decisions of United States Supreme Court:

> The [] decisions in *Di Re* and *Ybarra* demonstrate that probable cause to arrest and/or search an individual must be particularized to that individual; mere proximity to the criminal activity alone is insufficient to establish probable cause. However, as illustrated by the decision in *Pringle*, evidence showing a common criminal enterprise can provide the necessary link between criminal activity and an individual so as to establish probable cause sufficiently particularized to that individual.

*Id.*, 278 Va. At 313, 683 S.E.2d at 305. Because there was no evidence indicating that Whitehead had committed or was going to commit a crime, and because there was no evidence suggesting that the passengers were involved in a common criminal enterprise, The Virginia Supreme Court refused to hold that the positive K-9 alert constituted probable cause to search a recent occupant of the vehicle.

We note that in *Whitehead*, the Commonwealth had a stronger case for probable cause to search the passengers than was present in the instant case. In *Whitehead*, the drug dog "hit" on the vehicle while defendant was *inside* of the vehicle, whereas in the instant case, the drug dog "hit" on the vehicle while no one was inside. We also note that the drug dog hit at the driver's door, and that defendant was a passenger.

"The textual touchstone of the Fourth Amendment is reasonableness. When applying this basic principle, the Supreme Court has consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry." *State v. Shearin*, 170 N.C. App. 222, 240, 612 S.E.2d 371, 384 (2005) (quoting *Alvarez v. Montgomery County*, 147 F.3d 354, 358 (4th Cir. 1998)). Given the specific facts of this case, we hold that it is factually more similar to *Anderson* and *Whitehead* then to *Anchondo*. We note that the rationale of *Anchondo* has been specifically rejected by *Anderson*, *Gibson*, *Wallace*, and *Fondia*. Further, we hold the logic of *Anderson* and *Whitehead* to be more compelling than that of *Anchondo*. The fact that defendant was formerly a passenger in a motor vehicle as to which a drug dog alerted, and a subsequent search of the vehicle found no contraband, is not sufficient, without probable cause more particularized to defendant, to conduct a warrantless search of defendant's person.

## v. Conclusion

The order of the trial court suppressing the fruits of the warrantless search is affirmed.

AFFIRMED.

Judges CALABRIA and BEASLEY concur.