958 F.2d 368
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
James Michael MOORE, a minor suing by James Y. Moore, his
Guardian ad Litem, Plaintiff-Appellant,
v.
Wilbert L. MORTON, individually, and a Deputy Sheriff in
Granville County, Defendant-Appellee.
 No. 91-2603.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 1, 1991.
Decided March 13, 1992.
As Amended March 23 and April 2, 1992.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (CA-89-962-5-CIV)
 Argued: Emma Jean Levi, Chapel Hill, N.C., for appellant.
 Robert Scott Pierce, Womble, Carlyle, Sandridge & Rice, Winston-Salem, N.C., for appellee.
 E.D.N.C.
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 
 
 1
 Before K.K. HALL and MURNAGHAN, Circuit Judges, and RICHARD C. WILLIAMS, United States District Judge for the Eastern District of Virginia, Sitting by Designation.
 
 OPINION
 RICHARD L. WILLIAMS, District Judge:
 
 2
 The Appellant, James Michael Moore, filed this action for damages based on various alleged constitutional violations, pursuant to 42 U.S.C. § 1983, and pendant state law claims. In particular, the Appellant asserts claims of false imprisonment, unlawful seizure, excessive force, assault and battery, and intentional infliction of emotional distress. The district court granted the Defendant-Appellee's motion for summary judgment on all counts. We affirm in part and reverse in part.
 
 I.
 
 3
 On the evening of November 29, 1988, Moore attended a high school basketball game at a rival high school, J.F. Webb. As the Appellant left the game, a crowd outside the gymnasium began harassing him and his companions. A group of approximately twentyfive to thirty boys surrounded the Appellant and his friend, Kevin Williams. They were taunting and pushing the two when someone in the crowd seized the Appellant's hat. The Appellant became very upset and began running around frantically searching for his hat. He began yelling and cursing, demanding that it be returned. The crowd had by this time become quite agitated. This includes a fight, observed by the Appellant, in which students of Webb High School beat up one of the Appellant's classmates. The situation was plainly volatile, and the Appellant even admits that he became concerned for his safety.
 
 
 4
 At this point, a teacher/coach from the Appellant's high school (South Granville) approached the Appellant to calm him down. He was unable to calm the Appellant, however, and decided that the Principal of Webb High School, who was still inside the gymnasium, should be informed of the situation. Principal McDonald, upon being appraised of the situation, immediately went to investigate. Observing the Appellant and a group of individuals he knew to be troublemakers, he became concerned that a riot might ensue. He approached the Appellant to try to calm him down. The Appellant, however, could not be calmed. Principal McDonald then informed the Appellant that if he did not calm down he would be arrested.
 
 
 5
 It is at this point that the Appellee, Wilbert Morton, arrived on the scene. The Appellee, a large man--5[11]s !DAG> and 260 pounds--is a deputy sheriff who does security work for Webb High School. He was dressed in his official uniform and carried a pistol and a 18s !DAG> metal flashlight. As he approached the scene, the Appellee observed Principal McDonald talking to the Appellant. He also observed that the Appellant was jumping up and down, yelling and cursing about someone having taken his hat. Pursuant to Principal McDonald's request, Deputy Morton asked the Appellant to leave. The Appellant refused, insisting instead that Deputy Morton help him find his hat. When the Appellant began trying to evade Deputy Morton's efforts to escort him away from the crowd, the Appellee grabbed the Appellant by the collar and started to drag him away.
 
 
 6
 As the deputy dragged the Appellant toward the parking lot, the crowd began chanting and encouraging the Appellee to hit Moore. According to the Appellant's deposition, the Appellee then threatened him, asking the Appellant if he did not believe that he, the Appellee, would in fact hit him. Deputy Morton then struck the Appellant with his flashlight, hitting him "very hard" in the face. Five seconds later, when they had reached the lower parking lot, Deputy Morton again struck the Appellant, this time hitting him in the lower right jaw.
 
 
 7
 The Appellee denies these allegations. He admits that he may have once unintentionally struck the Appellant when he placed the flashlight under the Appellant's throat to restrain him while he was getting a better grip on his collar, but he categorically denies ever intentionally striking the Appellant. A number of witnesses have also signed affidavits stating that they never saw the Appellee strike the Appellant. These include a number of witnesses the Appellant claimed had seen the Appellee strike him.
 
 
 8
 At the parking lot, the Appellee asked the Appellant where his car was. An acquaintance of the Appellant's, Ulyses Tharrington, told the Appellee that Moore was riding with him. The Appellant testified that Deputy Morton "threw" the Appellant away from him and broke his gold chain. Breaking the chain caused the Appellant to lose the baby ring hanging from it. The Appellant complained about losing his ring and wanted to look for it. Upon his complaints, however, the Appellee grabbed him again and started to drag him to his patrol car.
 
 
 9
 Again, the Appellee's version of the facts differs. He denies pushing the Appellant away and does not recall the Appellant complaining about losing a ring. Rather, the Appellee states that once they got to the car he turned the Appellant loose and instructed him to go home. The Appellant, however, refused to leave and started yelling and screaming about his hat.
 
 
 10
 The Appellee then grabbed the Appellant by the collar and dragged him to the patrol car. At the patrol car, the Appellee frisked the Appellant and started putting handcuffs on him. It was the Appellee's intent to take Moore to the Magistrate's office and have him charged with "disorderly conduct." Before he could be taken away, however, Mr. Fisher, an Assistant Principal at the Appellant's high school, arrived to take custody of him. The Appellant was released into Mr. Fisher's custody and taken home. After arriving home and relating his story to his parents, the Appellant was taken by his parents to the Granville Medical Center. There he was treated for abrasions on the left temple and behind the right ear, swelling over the right cheek, injury to the upper and lower lips, and lacerations at the tooth level.
 
 II.
 
 11
 We review a district court's grant of summary judgment de novo, employing the same standard applied by the district court. Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1127-28 (4th Cir.1987). In accordance with Rule 56 of the Federal Rules of Civil Procedure, we will affirm a grant of summary judgment if, after reviewing the pleadings, depositions, interrogatories, and affidavits, we are satisfied that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; Barwick v. Celotex Corp., 736 F.2d 946, 958 (4th Cir.1984). The party moving for summary judgment bears the initial burden of pointing to the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Higgins v. Scherr, 837 F.2d 155, 157 (4th Cir.1988). The burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); White v. Rockingham Radiologists, Ltd., 820 F.2d 98, 101 (4th Cir.1987).
 
 A. Unlawful Seizure and False Arrest
 
 12
 The first issue addressed by the district court was the Section 1983 claim for unlawful seizure and the state law claim for false imprisonment. Under both North Carolina and federal law, a seizure falling short of a traditional arrest is subject to a requirement of reasonableness. See Terry v. Ohio, 392 U.S. 1, 16 (1968); State v. Harris, 384 S.E.2d 50, 53 (N.C.App.1989), aff'd, 391 S.E.2d 187 (N.C.1990). If the conduct of Deputy Morton amounted to a full seizure/arrest, a higher standard would apply. Under either the fourth amendment or North Carolina law, there would have to be probable cause to make the arrest. Gerstein v. Pugh, 420 U.S. 103, 111 (1975); Simons v. Montgomery County Police Officers, 762 F.2d 30, 33 (4th Cir.1985), cert. denied, 474 U.S. (1986); Myrick v. Cooley, 371 S.E.2d 492, 495 (N.C.App.1988).[1] The Appellee clearly had probable cause to arrest the Appellant for "disorderly conduct" under North Carolina law. See N.C.Gen.Stat. § 14-288.4(a)(4)(a) (Michie Supp.1991). Therefore, regardless of the type of seizure involved,[2] the Appellee's actions, as a matter of law, did not constitute a false arrest or an unlawful seizure.
 
 B. Excessive Force and Assault and Battery
 
 13
 The second issue addressed by the district court was the plaintiffAppellant's claim of excessive force under Section 1983 and his claim of assault and battery under state law. The lower court held:
 
 
 14
 As to plaintiff's contentions that defendant hit him twice "very hard" with a flashlight, these too are not sufficiently supported to withstand summary judgment. Each of the individuals who have submitted affidavits in connection with this motion--including several whom plaintiff testified at his deposition saw him being hit--deny that they saw defendant strike plaintiff.... Other than plaintiff's unsupported allegations, there is no admissible evidence whatsoever that defendant intentionally hit plaintiff. Even the unsworn affidavits already excluded make no statement that any force used was unnecessary or unwarranted. The medical records also do not support plaintiff; "multiple facial abrasions, bruises" are not consistent which [sic] being twice struck hard in the face with a heavy flashlight. Thus defendants [sic] motion for summary judgment as to the 1983 excessive force claim and the assault and battery claim are granted.
 
 
 15
 Moore v. Morton, No. CA-89-962-5-CIV, Order at 11 (E.D.N.C. Nov. 16, 1990). The lower court's opinion appears to rest on two grounds: (1) that the Appellant's deposition, standing alone, was insufficient to create a material issue of fact; and (2) that the Appellee's evidence made the Appellant's version of the facts implausible.
 
 
 16
 The first ground may be based on the lower court's view either that the sheer quantity of the defendant's evidence outweighed the plaintiff-Appellant's deposition or that the deposition amounted to nothing more than bare allegations. The deposition clearly contains more than mere allegations or conclusions of law. It clearly sets out the factual basis of the Appellant's claim:
 
 
 17
 [S]ome guys, they were, like, around us, like, hollering, like, "Hit him," and stuff. And he was, like, "You don't think I'll hit you with this?" He was saying that. Deputy Sheriff Morton was saying, "You don't think I'll hit you with this?" I was, like, "I haven't done anything. All I wanted was my hat."
 
 
 18
 ....
 
 
 19
 Then he hit me on--on my face.
 
 
 20
 Q. What did he hit you with?
 
 
 21
 A. The flashlight.
 
 
 22
 ....
 
 
 23
 He hit me very hard. When he hit me, it just--like, just numbed--just numbed me. It was like I can't believe he hit me.
 
 
 24
 Transcript of Appellant's Deposition, at 38-39. The Appellant is similarly clear in stating the facts surrounding his allegation that he was struck a second time, five seconds later, when they reached the lower parking lot. See Transcript of Appellant's Deposition, at 46-47.
 
 
 25
 The Appellee did, however, introduce substantial evidence, both in terms of quantity and quality, contradicting the plaintiff's version of the facts. Additionally, the Supreme Court has expressed the desirability of dismissing meritless cases at the summary judgment phase: "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986) (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289 (1968)).
 
 
 26
 Nevertheless, it remains the well established rule that "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether or not there is a genuine material issue of fact " 'the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.' " Matsushita Electric, 475 U.S. at 587 (quoting United States v. Diebold, 369 U.S. 654, 655 (1962)). Further, " 'the issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.' " Liberty Lobby, 477 U.S. at 248-49 (citing First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288-89 (1968)).
 
 
 27
 Bearing these standards in mind, the sheer quantity of evidence favoring a party can not be grounds for granting summary judgment. It is inappropriate for a jury to make its decision based solely on who produced more witnesses. The jury has the further oibligation to weigh the credibility of those witnesses. While the number and quality of the witnesses plays an important role in determining the weight to be given the testimony, it is the function of the trier of fact, not the judge at the summary judgment phase, to do the weighing. See Liberty Lobby, 477 U.S. at 249 ("[I]t is clear enough from our recent cases that at the summary judgment phase the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").[3]
 
 
 28
 The lower court's decision was also based on its conclusion that the plaintiff's version of the facts was implausible given the totality of the evidence. See Matsushita Electric, 475 U.S. at 587 (stating that "if the factual context renders respondents' claim implausible ... respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary.").[4] In particular, the lower court stated that the medical record was "not consistent [with] being twice struck hard in the face with a heavy flashlight." Moore v. Morton, No. CA-89-962-5-CIV, Order at 11 (E.D.N.C. Nov. 16, 1990).
 
 
 29
 Medical records may be so conclusive that they could render a party's version of the facts wholly implausible. For instance, if the medical records showed that the Appellant suffered no injuries whatsoever, the case may have been suitable for summary judgment. The Court does not need to consider that question, however, because the emergency room record establishes that the Appellant sustained physical injuries. In particular, the medical report shows that the Appellant suffered abrasions to the left temple and behind the right ear, swelling over the right cheek, injury to the upper and lower lips, and lacerations at the tooth level. While there where no broken bones or other severe injuries, the injuries that were sustained are not wholly inconsistent with the Appellant's version of the facts. Thus, viewing the evidence in the light most favorable to the non-moving party, a rational trier of fact could conclude that the injuries were the result of blows received from a metal flashlight.[5] Further there is uncontroverted evidence in Kevin Williams' second affidavit, that "[b]efore the sheriff grabbed Michael, Michael had no cuts or bruises on his temple, lips or any other part of his face." Williams Affidavit of August 23, 1990, para. 9.[6] Evidence of a number of abrasions on the appellant's face, especially the upper part of the face, would not seem to be entirely consistent with the Appellant merely having been dragged around by the collar. A reasonable jury might question how the plaintiff received those injuries if he was not struck with the flashlight.
 
 C. Qualified Immunity
 
 30
 The district court also justified its decision on the grounds of qualified immunity. Government officials are shielded by qualified immunity "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). The district court correctly held that "it was objectively reasonable for defendant to believe that his decision to physically escort plaintiff away from the school grounds was constitutional. It was equally reasonable for him to believe that the constitution did not prohibit him from holding the struggling plaintiff back with his flashlight in order to obtain a better grip on plaintiff's sweater." Moore v. Morton, No. CA-89-962-5-CIV, Order at 12 (E.D.N.C. Nov. 16, 1990). Because the district court had already found that the Appellant was not struck with the flashlight, it did not consider whether this would also have been protected by qualified immunity. It is clear, however, that no officer could reasonably believe that it was objectively reasonable for him to strike the Appellant twice in the face with a flashlight while the Appellant was securely under the Appellee's control.
 
 
 31
 D. Intentional Infliction of Emotional Distress
 
 
 32
 In order to establish the tort of intentional infliction of emotional distress under North Carolina law, the plaintiff must establish: "(1) 'extreme and outrageous conduct,' (2) which 'intentionally or recklessly causes' (3) 'severe emotional distress to another.' " Lenins v. KMart Corp., 391 S.E.2d 843, 848 (N.C.App.1990) (quoting Dickens v. Puryear, 276 S.E.2d 325, 332 (N.C.1981)). The plaintiff-Appellant introduced no evidence that he had suffered any severe emotional distress whatsoever from the Appellee's alleged conduct in striking him with the flashlight. While the Appellant's deposition included certain facts and descriptions from which one could infer emotional distress, these facts are directly related to the Appellee's conduct in "dragging" the Appellant from the scene, rather than in his striking the Appellant with the flashlight. They were caused by conduct that was legally acceptable, and thus cannot be the basis for a claim of intentional infliction of emotional distress.
 
 III.
 
 33
 In conclusion, we affirm the grant of summary judgment on all counts except the Appellant's claims for assault and battery and excessive force. On these claims, we hold that the plaintiff's deposition testimony was sufficient to create a conflict of material fact. For this reason, the matter is remanded for further proceedings consistent with this opinion.
 
 
 34
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 35
 K.K. HALL, Circuit Judge, concurring in part, dissenting in part:
 
 
 36
 I agree with the majority's rendition of the facts and the holdings of Parts II-A and II-D. I disagree with the majority's conclusion in Part II-B because I would hold that Moore's evidence was insufficient to withstand summary judgment. Consequently, I would not reach the qualified immunity issue discussed in Part II-C of the majority's opinion, and I respectfully dissent.
 
 
 37
 Moore alleged in his complaint that deputy Morton dragged him around the school grounds and the school parking lot and struck him in the face with a flashlight while a taunting crowd of twenty-five to thirty bystanders watched. Yet, five witnesses, including three witnesses Moore claimed had seen him being struck, swore in affidavits that they did not see deputy Morton strike him.
 
 
 38
 In opposition to Morton's motion for summary judgment, Moore submitted his deposition testimony and affidavits of Williams and Tharrington. The affidavit of Williams was contradicted by an earlier sworn statement, and the affidavit of Tharrington was factually unspecific and conflicted with Moore's allegations. Based on all the evidence, the district court granted summary judgment on the § 1983 claim for excessive force.
 
 
 39
 The majority correctly states that the district court may not qualitatively or quantitatively weigh the evidence when considering a motion for summary judgment. However, the district court must consider the factual context of the allegations. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " Id. (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289 (1968)). Moreover, "if the factual context renders [the nonmovants'] claim implausible ... [, the non-movants] must come forward with more persuasive evidence to support their claim than would otherwise be necessary." Id.
 
 
 40
 The majority concedes that Morton submitted quantitatively and qualitatively substantial evidence to contradict Moore's allegations, but the majority points to no persuasive evidence that creates a genuine issue of material fact in light of the whole record. The evidence must be more than merely "colorable" to avoid summary judgment; it must be sufficient for a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Analogous to the standard for granting a directed verdict, summary judgment should be ordered when "there can be but one reasonable conclusion as to the verdict." Id. at 250.
 
 
 41
 In the instant case, though Moore alleged that numerous bystanders witnessed Morton strike him in the face with a flashlight in the school's "well-lit" parking lot, corroboration of his allegations is completely lacking. In stark contrast, factual evidence against his claims is substantial. Under these circumstances, there is no room for reasonable minds to differ. Thus, there is no genuine issue for trial, and the district court properly entered summary judgment. I would affirm.
 
 
 
 [1]
 The standards under North Carolina law and the constitution are actually slightly different. Myrick v. Cooley, 371 S.E.2d 492, 494 (N.C.App.1988). Under the fourth amendment, an arrest is lawful if it is supported by probable cause. See Gerstein v. Pugh, 420 U.S. 103, 111 (1975); Simons v. Montgomery County Police Officers, 762 F.2d 30, 33 (4th Cir.1985), cert. denied, 474 U.S. 1054 (1986). Under North Carolina law, an arrest is actionable only if there was no legal justification for it. Id. "[T]he existence of legal justification for a deprivation of liberty is determined in accordance with the law of arrest." Id. (citing Hicks v. Nivens, 185 S.E.2d 469 (N.C.1936)). North Carolina law provides that a warrantless arrest for a misdemeanor may be made if "the officer has probable cause to believe [the individual] has committed a criminal offense in the officer's presence." N.C.Gen.Stat. § 15A-401(b)(1) (Michie Supp.1991). Thus, in the instant case, the inquiry boils down to whether or not the officer had probable cause
 
 
 [2]
 The Court expresses no opinion as to whether or not, or when, the conduct complained of became a full blown constitutional seizure or an arrest under North Carolina law
 
 
 [3]
 The wisdom of this rule is apparent. Along with potentially depriving a party of its right to a jury, it is impossible to weigh the credibility of witnesses based on their affidavits. This infirmity is accentuated by the fact that the judge at summary judgment will not have had the benefit of cross examination to evaluate biases and to establish the ability of witnesses to observe what occurred
 
 
 [4]
 While this passage is generally applicable, the context in which it arose has a distinct bearing on its meaning. Matsushita Electric was at base about the appropriateness of summary judgment in antitrust cases. In particular, this passage deals with the appropriateness of summary judgment in the context of a conspiracy claim under Section 1 of the Sherman Anti-Trust Act, 15 U.S.C. § 1. There are certain principles of antitrust law that have a distinct bearing on the "factual context" that might render a claim implausible. More fully, the Court qualified the term implausible with the phrase: "if the factual context renders respondents' claim implausible--if the claim is one that simply makes no economic sense--respondents must come forward with more persuasive evidence...." Matsushita Electric, 475 U.S. at 587. Corporations, in the context of antitrust law, are assumed to act independently and in their economic self-interest. Id. at 587-88 (citing Monsanto Co. v. Spray-Rite Service Corp. 465 U.S. 752, 764 (1984), and First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 280 (1968)). The relevant issue remains what inferences can be drawn from the evidence. Nothing about Matsushita Electric changes the rule that " '[o]n summary judgment the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.' " Id. at 587 (quoting United States v. Diebold, 369 U.S. 654, 655 (1962)). In a Section 1 Sherman antitrust case, however, "antitrust law limits the range of permissible inferences from ambiguous evidence." Id. at 588. So the question in the present case is whether or not the medical records make it impossible to infer from the evidence as a whole, viewing that evidence in the light most favorable to the Appellant, that the Appellant was intentionally struck with the flashlight
 
 
 [5]
 It is worth noting that the Appellee did not introduce any affidavits from medical experts concerning the nature or possible causes of the appellant's injuries
 
 
 [6]
 It is not clear whether the court excluded this portion of Williams' affidavit or not. This assertion is not, however, refuted by anything in Williams' first affidavit. The basis for excluding later affidavits is that a party should not be able to create an issue based solely on its own contradictory testimony. See Barwick v. Celotex Corp., 736 F.2d 946, 959-60 (4th Cir.1984). It goes too far to hold that because of a contradiction in one part of the affidavit, nothing the affiant says may be considered on summary judgment