STATE OF NORTH CAROLINA v. WILLARD HORACE COLSON.

(Filed 12 June 1968.)

**1. Constitutional Law § 21;   Searches and Seizures § 1—**

    The constitutional guaranty against unreasonable searches and seizures does not apply where incriminating articles are revealed by the voluntary act of defendant or are in plain view of the officers, no search being necessary for their discovery.

**2. Criminal Law § 84—　Defendant's bloody underclothing held lawfully seized.**

During a general conversation with police officers at the police station after having been questioned about his wife's death, defendant, who had been drinking, offered to show the officers a scar on his stomach, and in so doing revealed blood on his undershirt. At the officers' request defendant then exhibited his undershorts which also contained bloodstains. The officers seized the clothing without a search warrant and without having arrested defendant. *Held:* Defendant's underclothing was properly admitted into evidence, the record failing to show that defendant was intoxicated to such an extent that he did not intelligently and voluntarily reveal his bloody underclothing to the officers, but conceding defendant's intoxication the bloody clothing was lawfully seized by the officers since it was in plain view.

**3. Criminal Law § 99—**

The questions asked witnesses by the court in this case *are held* to be solely for the purpose of clarification of the witness' testimony and do not constitute an expression of opinion by the court on the evidence.

**4. Coroners;　Criminal Law § 111—**

In a prosecution for homicide, refusal of the court to instruct the jury on the statutory duties of coroners set forth in G.S. 152-7 is proper, such duties not being at issue in the case.

**5. Criminal Law § 106—**

To withstand a motion to nonsuit it is not required that the evidence exclude every reasonable hypothesis other than that of defendant's guilt, but the case should be submitted to the jury if there is substantial evidence of defendant's guilt of all material elements of the offense charged, this rule applying whether the evidence is circumstantial, direct, or both.

**6. Homicide § 21—**

Evidence of the State tending to show that defendant's wife was stabbed to death with a butcher knife in the bedroom of their home, that defendant had been in the bedroom on the night in question, that blood of the deceased's type was found on defendant's underclothing, and that defendant, without prompting, had asked an officer if his wife had been stabbed with a butcher knife, *is held* sufficient to be submitted to the jury on the issue of defendant's guilt of second degree murder or manslaughter.

APPEAL by defendant from *Cohoon, J.,* November 1967 Session of PASQUOTANK Superior Court.

Criminal prosecution on an indictment for first-degree murder. At the opening of the trial the Solicitor announced he would not try the defendant for first-degree murder, but for second-degree murder or manslaughter, as the evidence might justify.

The State offered evidence that at approximately 12:30 a.m. on 4 August 1967 the police went to defendant's home in Elizabeth City in response to a telephone call from defendant's son. Upon being admitted to the house by the son, the officers found the body of the

defendant's wife sitting on a settee in the living room and slumped over with her head on the armrest. She was dead and her body was cold. Examination revealed a wound in her chest. The Coroner, who examined the body the following morning, testified that in his opinion the cause of death was the chest wound, which penetrated the heart and large vessels leading to the lungs. The officers made a search of the house and found a butcher knife approximately 12 inches long on the counter in the kitchen. There was blood on the blade of the knife. In the bedroom they found blood spots on the bed clothing, sheets, and rugs.

At approximately 1:30 a.m., as the covered body of the deceased was being placed in a hearse in front of the house, the defendant walked up and asked the Chief of Police: "Chief, what's wrong? Has she had a heart attack?" To this the Police Chief answered: "No, she did not have a heart attack; she has been stabbed." The defendant then said: "What with, a butcher knife?" At the time of this conversation defendant appeared to be intoxicated. Following the conversation the Police Chief asked the defendant and his son if they would accompany him to the police station, which they did voluntarily.

At the police station the defendant was given the *Miranda* warning, following which he gave the police a statement in which he said that he and his son had arrived at the house about 5 o'clock on the preceding afternoon, that his wife was at the house and had been drinking, that an argument between defendant and his wife ensued, that defendant left the house about 6 o'clock, at which time his wife was lying sprawled out on the settee. Defendant stated he had then gone to the liquor store and had purchased a pint of liquor, following which he just rode around and drank. Defendant identified the butcher knife which had been found in the kitchen of his home as his, but expressly denied that he had ever cut his wife or that he knew who had done it. Following the giving of this statement and during a general conversation at the police station, defendant offered to show the police officers a scar on his stomach. When he pulled his shirt open, the officers observed blood on his undershirt. They then asked him if they might see the rest of his underclothes, at which time blood was also observed on his undershorts. Defendant gave no explanation to the officers or to his son as to how he got the blood on his underclothes.

The State offered the testimony of a blood-typing specialist from the FBI who testified he had examined blood samples taken from the body of the deceased and had determined the blood of the deceased to be group "AB". He had examined a blood specimen of the

defendant and determined the defendant's blood to be group "O". This witness then testified that he had made examination of the blood spots on the deceased's garments, on the sheets in the bedroom, and the blood on the butcher knife, and these were all found to be group "AB". Likewise he had examined the blood on the underclothing worn by defendant and this was also found to be group "AB", the same as that of the deceased.

The defendant remained at the police station from the time he arrived there at approximately 1:30 a.m. on 4 August 1967 until about 9:30 a.m. the following morning, when he accompanied the police officers back to his home. Upon making a further search, the officers found an empty Vodka bottle under a chest of drawers in the bedroom. An employee of the County ABC Board testified that the defendant had come into the store between 7:15 and 8:00 p.m. on the evening of 3 August 1967 and witness had sold him a pint of Vodka. This witness identified the bottle found in the bedroom as being a bottle sold from his register on 3 August 1967.

At the close of the State's evidence, defendant moved for nonsuit which was denied. The jury returned a verdict of guilty of manslaughter. From a judgment of imprisonment thereon, defendant appealed, assigning as error the court's refusal to grant defendant's motion of nonsuit and making certain other assignments of error as noted in the opinion.

*T. W. Bruton, Attorney General, by Bernard A. Harrell, Assistant Attorney General, for the State.*

*Russell E. Twiford, O. C. Abbott, and John S. Kisiday, for defendant appellant.*

PARKER, J. Defendant's first assignment of error relates to the admission into evidence of clothing worn by defendant on the night of his wife's death. Defendant contends that these articles of clothing were removed from his person by the police officers without a search warrant, at a time when he was highly intoxicated, and prior to his arrest. For these reasons, defendant contends the articles could not legally be admitted into evidence or exhibited to the jury. In support of his contention, defendant cites the following from 47 Am. Jur., Searches and Seizures, § 53, p. 533:

> "The constitutional guaranties against all unreasonable searches or seizures secures every citizen against a search of his person not plainly authorized by some law. A search of the person, however, without a warrant, in connection with a lawful arrest, and the taking from the arrested person the instru-

ments found in his possession which were used in connection with the crime is not an unreasonable search or an illegal seizure. No search of the person or seizure of any article found thereon can be made on mere suspicion that the person searched is violating the law, or without a search warrant, unless and until the alleged offender is in custody under a warrant of arrest or shall be lawfully arrested without a warrant as authorized by law."

Defendant contends that at the time his bloody underclothing was first observed by the police and his clothing was taken from him, he was in the police station only for purpose of questioning and had not yet been placed under arrest. Therefore, he contends, the search of his person and the seizure of his clothing could not have been made as an incident to his arrest. But even so, in this case the bloody underclothing was not discovered by the police officers as a result of any search being made by them of defendant's person. Rather, the defendant voluntarily exhibited his underclothing to them while, for whatever reasons of his own, he was engaged in showing them scars upon his body. When the incriminating article is in plain view of the officers or is revealed by the voluntary act of the defendant, no search is necessary and the constitutional guaranty does not apply. *State v. Kinley,* 270 N.C. 296, 154 S.E. 2d 95.

Defendant contends, however, that his act in revealing his underclothing to the officers was not voluntary, because he was too intoxicated at the time to exercise a free volition. But even if this be true, drunkenness provides the drinker with no constitutional cloak of privacy not available to his sober brothers. Incriminating articles which are plainly in view of the police may be observed by them. They would be derelict in their duties if they failed to do so. And it makes no difference that the articles are disclosed to view by the irrational motives of a drunk, rather than by the calculated actions of his sober brother. In either case, nothing in the Constitution or in our laws relating to searches and seizures requires that the police close their eyes and refuse to see what is plainly in sight.

Furthermore, the record before us simply does not support defendant's contention that his act in disclosing his underclothing to the police was other than intelligently and voluntarily committed. This occurred after he had accompanied the police officers to the police station, after he had been given the *Miranda* warnings, and after he had voluntarily given a lengthy statement which he later permitted to be introduced without objection at his trial. Examination of that statement shows conclusively that the defendant was not so intoxicated at the time he gave it but that he could answer

questions coherently and intelligently. Nothing in the record would indicate that when he later showed the officers his underclothing he had become any more intoxicated or any less capable of voluntary and intelligent action. There was no error in allowing introduction in evidence of the incriminating articles.

Defendant's second assignment of error relates to certain questions asked of .witnesses by the trial judge during the course of the trial. "A trial judge has undoubted power to interrogate a witness for the purpose of clarifying matters material to the issues. . . . He should exercise such power with caution, however, lest his questions, or his manner of asking them, reveal to the jury his opinion on the facts in evidence and thus throw the weight of his high office to the one side or the other." *In Re Will of Bartlett,* 235 N.C. 489, 70 S.E. 2d 482.

The first questions asked by the judge to which the defendant points as constituting an expression of opinion by the court were three questions directed to the police officer who was testifying concerning the second search he had made of defendant's home, at which time the Vodka bottle had been found under the chest of drawers in the bedroom. These questions merely clarified that the police officer had not looked under the chest when he had first searched the premises on the preceding night and therefore he was simply in no position to say whether the bottle was or was not there at the time of the first search. These brief questions and the answers elicited served to clarify the testimony of the witness and were certainly in no way prejudicial to the defendant.

The only other questions asked by the court to which defendant now takes exception were directed to Dr. Weeks, the Coroner, as follows:

"Q. In connection with what you have previously been asked, do you have an opinion as to the maximum distance a person could have walked with a wound such as you found inflicted on the person of the deceased?

"A. It was my opinion, Judge, that she would not have walked. I think there may have been some agonal involuntary movement after such a wound, but as far as coordinated purposeful movements, certainly in my opinion most unlikely.

"Q. If you will look at that butcher knife on the table.
"A. Can I pick this up?"

. "Q. Yes. Do you have an opinion satisfactory to yourself as to whether or not the wound which you found on the body

of Mrs. Colson could have been made by an instrument of that kind and character?

"A.    Yes, sir, I do.

"Q.    What is your opinion?
"A.    I think it could have."

Previous to the asking of these questions by the court, the witness had testified on direct examination from the Solicitor, and had been cross-examined by counsel for the defendant, as to the length of time a person who had received a wound such as he found on the body of the deceased could have lived after receiving such a wound. He had also testified without objection from the defendant that in his opinion such a person would not have been able to walk. The brief questions directed to him by the court, while certainly pertinent to the case, served to clarify his previous testimony. These very limited and brief questions asked by the judge did not, in our opinion, lead the jury to believe that the court was expressing an opinion as to the defendant's guilt. There was not here such repeated or prolonged questioning of witnesses by the court as the Supreme Court has found to be objectionable in other cases. See, State v. Lea, 259 N.C. 398, 130 S.E. 2d 688.

Defendant next assigns as error the trial court's failure to instruct the jury on the statutory duties of Coroners set forth in G.S. 152-7, as the counsel for defense had requested. These statutory duties were not at issue in this case. It was not error for the court to refuse to instruct the jury concerning them.

Defendant finally contends that the trial court committed error in refusing to grant his motion of nonsuit. Defendant points out that the evidence introduced by the State was all circumstantial, and he contends that even taken in the light most favorable to the State the evidence merely raises a suspicion as to the defendant's guilt and fails to exclude every other reasonable hypothesis. However, to withstand a motion of nonsuit in a criminal case it is not required that the evidence exclude every reasonable hypothesis other than that of defendant's guilt. It is required that there be substantial evidence of all material elements of the offense, and it is, immaterial whether the substantial evidence is circumstantial or direct or both. As was said by Higgins, J., in State v. Stephens, 244 N.C. 380, 93 S.E. 2d 431:

> "To hold that the court must grant a motion to dismiss unless, in the opinion of the court, the evidence excludes every reasonable hypothesis of innocence would in effect constitute the presiding judge the trier of the facts. Substantial evidence

STATE *v.* COLSON.

of guilt is required before the court can send the case to the jury. Proof of guilt beyond a reasonable doubt is required before the jury can convict. What is substantial evidence is a question of law for the court. What that evidence proves or fails to prove is a question of fact for the jury."

In this case there was substantial evidence of all the material elements of the crime with which defendant was charged.

The death of deceased and the cause of her death, the puncture wound in her chest, were established by unchallenged evidence. A butcher knife was found in the kitchen, stained with blood of the blood type of the deceased. The size and depth of the wound on the deceased's body which caused her death was the type of wound which would have been made by stabbing with the butcher knife. It is a reasonable inference that this knife was the murder weapon. There was evidence defendant had been arguing with his wife on the night in question. Blood of the type of the deceased was found in the bedroom, a reasonable inference being that this was the place where she was stabbed. A Vodka bottle which defendant had purchased was found in the bedroom under a chest of drawers, the reasonable inference being that defendant himself had returned to his home and entered the bedroom. Blood of the type of the deceased was found on the defendant's underclothing, the reasonable inference being that defendant was not only at home, but was very near his wife at the time she was stabbed. Defendant, without any prompting, asked the Police Chief if his wife had been stabbed with a butcher knife. When all facts, and each permissible inference from each fact in evidence, are put together, there is certainly substantial evidence of all material elements of the offense sufficient to withstand the motion of nonsuit. It was for the jury to determine whether the evidence established defendant's guilt beyond a reasonable doubt. It was not error for the court to submit the case to the jury.

Defendant has assigned as error certain portions of the judge's charge to the jury. Examination of the charge as a whole reveals that it was clear, correct, and without error. Out of abundance of precaution, defendant's counsel has also noted a large number of. other exceptions in the record. However, these are taken as abandoned by him, since they are not set out in appellant's brief, nor is any reason or argument stated or authority cited in support of them. Rule 28; *Rules of Practice in the Court of Appeals of North Carolina.*

In the trial of this case we find

No error.

MALLARD, C.J., and BROCK, J., concur.