STATE OF NORTH CAROLINA v. MICHAEL SCOTT BEVERIDGE

No. 921SC931

(Filed 7 December 1993)

**Searches and Seizures § 58 (NCI4th)— warrantless pat-down search—baggie in pocket—existence of contraband not immediately apparent—cocaine fruit of constitutionally impermissible search**

Cocaine seized from defendant was the fruit of a constitutionally impermissible search where an officer was justified in conducting a limited pat-down of defendant to determine whether defendant was armed; the officer concluded that there was no weapon but there was a rolled-up plastic baggie in defendant's pants pocket; it was not immediately apparent to the officer that the baggie held contraband; and without some other exigency to justify the continued warrantless search

STATE v. BEVERIDGE

[112 N.C. App. 688 (1993)]

of defendant, the officer was no longer authorized to invade defendant's privacy.

**Am Jur 2d, Evidence § 415.**

Judge MCCRODDEN dissenting.

Appeal by defendant from judgment entered 29 July 1992 by Judge James R. Strickland in Dare County Superior Court. Heard in the Court of Appeals 31 August 1993.

Defendant was indicted by the grand jury on 13 May 1991 for allegedly violating N.C. Gen. Stat. § 90-95, possession of cocaine. Subsequently, defendant filed a motion on 25 September 1991 seeking to suppress certain evidence pertaining to the charges against him. That motion was heard on 27 July 1991.

The State's evidence upon *voir dire* tended to show that on 30 April 1991, at 12:50 a.m., Officer Joel Johnson made a driving while impaired arrest in an area known as Avalon Beach. Officer John Gregory assisted in that arrest. As Officer Johnson was arresting the driver of the automobile, Officer Gregory secured the vehicle. The defendant was a passenger in the car.

Officer Gregory asked the defendant to leave the car and exit to the rear of the vehicle. At that time, Gregory noticed a strong odor of alcohol and also noticed that the defendant acted "giddy." He determined that the defendant was probably under the influence of alcohol, and he also believed that the defendant was under the influence of a controlled substance.

Thereafter, Officer Gregory asked the defendant if he had any weapons and advised the defendant that he was not under arrest. Gregory then explained to the defendant that he intended to search the vehicle, and that he also was going to perform a "pat-down" of the defendant's person for weapons.

During the *voir dire* hearing, on direct examination, Officer Gregory testified that:

A. He allowed me to pat him down and as I patted him down I noticed that there was something in his front pocket which was—it was a rolled up plastic bag, it was a large size plastic bag rolled up. It was cylindrical in his pocket long.

STATE v. BEVERIDGE

[112 N.C. App. 688 (1993)]

Q. During your training, sir, as a law enforcement officer, had you received any training in controlled substances?

A. Yes, sir, I have. I received a narcotics patrol officer school which is a 24 hour school which teaches you to identify things, plastic bags, things like that that people carry contraband in.

. . .

Q. Now, what you felt in the defendant's pocket when you patted him down, sir, was that consistent with your training, sir, as to the type of plastic bags that are used to carry controlled substances?

A. Yes, sir, it is.

Q. And when you—after you felt that in the defendant's pockets, what did you next do, sir?

A. I asked him what he had in his pocket and he started laughing a little bit and pulled out some money, said he had some money in there and he pulled that out but I could still see the long cylindrical bag he had in his pocket, his tight jeans. I then asked him what it was. He stuck his hand in his pocket and tried to palm what he had and I asked him what he was trying to hide and he rolled open his hand and showed me the white plastic bag with the white powdery substance in it.

Q. You stated you could still see the baggie. Could you see a baggie itself, sir, or did you see the bulge in the pocket?

A. You could see the long cylindrical bulge in his pocket.

After the *voir dire* hearing, the trial court entered an order denying the defendant's motion to suppress the evidence. Based upon the evidence presented, the court made the following findings of fact:

3) That Officer Johnson placed said Harold Delp under arrest for the offense of impaired driving.

4) That the above-named defendant was a passenger in the vehicle at the time it was stopped by Officer Johnson.

5) That shortly after Officer Johnson placed said Harold Delp in custody Deputy Sheriff John Gregory arrived and was requested by Officer Johnson to assist by securing the vehicle

and searching the passenger compartment incident to the arrest of said Delp.

. . .

8) That Deputy John Gregory patted down the defendant and felt what seemed to him to be a rolled up plastic baggie in the defendant's front pants pocket.

9) That Deputy John Gregory had received numerous hours of training in the enforcement of the North Carolina Controlled Substances Act and had participated in numerous arrests for violations of said act.

10) That Deputy John Gregory was familiar with the area surrounding Awful Arthur's which was at the intersection where the vehicle had been stopped and is an area in which previous arrests have been made for controlled substances violations.

11) That Deputy Gregory had observed that the defendant appeared to exhibit the effects of having consumed some impairing substance and the effects were consistent with the use of a controlled substance such as was customarily stored in a rolled up plastic bag.

12) That Deputy Gregory asked the defendant what he had in his pocket to which the defendant replied money, and the defendant pulled some money out of his pocket.

13) That Deputy Gregory told the defendant that he could still see something in the defendant's pocket and asked the defendant to pull his pocket out.

. . .

15) That Deputy Gregory observed the defendant conceal something in the palm of his hand.

16) That Deputy Gregory asked the defendant what he had in his hand and then observed a plastic baggie containing a white powdery substance which appeared to Deputy Gregory to be cocaine.

17) That Deputy Gregory then seized the plastic baggie and placed the defendant in custody.

The trial court entered the following conclusions of law:

1) That based upon Deputy Gregory's training and experience and the circumstances as they appeared a reasonable officer would be justified in believing that probable cause existed to search the defendant for the possession of controlled substances.

2) That exigent circumstances existed that precluded Officer Gregory from obtaining a search warrant to search the defendant.

3) That the defendant was legally searched when asked about the bulge in his pants pocket observed by Deputy Gregory.

4) That the location, time of day, physical condition of the defendant, size and shape of the bulge in the defendant's pocket, the defendant's apparent effort to conceal the contents of his pocket from Deputy Gregory's scrutiny, gave Deputy Gregory reasonable grounds to believe that the defendant possessed illegal drugs.

Defendant subsequently entered a plea of guilty to possession of a Schedule II controlled substance, for which he received a sentence of two years imprisonment, suspended, and was placed on probation for three years. Defendant appeals the denial of the motion to suppress evidence.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Anita LeVeaux Quigless, for the State.*

*Merrell, Tillett & Barnes, by Edgar L. Barnes and Phillip H. Hayes, Jr., for defendant-appellant.*

ORR, Judge.

Even though the defendant in the case at bar has entered a plea of guilty to the charges against him, he has preserved his right of appeal pursuant to N.C. Gen. Stat. § 15A-979(b) from the denial of his motion to suppress the evidence seized as a result of the search by Officer Gregory. Defendant contends on appeal that the cocaine was found as a result of an unlawful search and seizure, thereby violating his rights under the Fourth Amendment of the United States Constitution and the Constitution of the State of North Carolina. We agree with defendant's argument and reverse the decision of the trial court.

We note at the onset that in a review of the denial of defendant's motion to suppress, we must first determine whether there was competent evidence to support the trial court's findings of fact. If the evidence presented was competent, the findings are conclusive and binding on appeal. *State v. Fleming*, 106 N.C. App. 165, 415 S.E.2d 782 (1992). Defendant has not contested the findings or conclusions of the trial court. They are therefore conclusive and binding on this Court. *Id.* at 168, 415 S.E.2d at 784.

As defendant correctly points out, the Fourth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, *Mapp v. Ohio*, 367 U.S. 643, 6 L. Ed. 2d 1081 (1961), provides the guarantee of "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. Similarly, the Constitution of the State of North Carolina states that "[g]eneral warrants, whereby any officer or other person may be commanded to search suspected places without evidence of the act committed, or to seize any person or persons not named, whose offense is not particularly described and supported by evidence, are dangerous to liberty and shall not be granted." N.C. Const. art. I, § 20. "[A] governmental search and seizure of private property unaccompanied by prior judicial approval in the form of a warrant is *per se* unreasonable unless the search falls within a well-delineated exception to the warrant requirement involving exigent circumstances." *State v. Cooke*, 306 N.C. 132, 135, 291 S.E.2d 618, 620 (1982).

*Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889 (1968) created one such exception. In *Terry*, the Supreme Court held that an officer may conduct a pat-down search to determine whether the person is in fact carrying a weapon. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Adams v. Williams*, 407 U.S. 143, 145, 32 L. Ed. 2d 612, 617 (1972). If a search goes beyond the bounds justifiable in determining that the suspect is armed, then any evidence found as a result of such a search will be suppressed as "fruit of the poisonous tree." *Sibron v. New York*, 392 U.S. 40, 20 L. Ed. 2d 917 (1968). The courts of North Carolina follow these same constitutional principles. *State v. Vernon*, 45 N.C. App. 486, 263 S.E.2d 340 (1980); *State v. Wooten*, 18 N.C. App. 269, 196 S.E.2d 603, *appeal dismissed*, 283 N.C. 670,

197 S.E.2d 879 (1973); *State v. Harris*, 95 N.C. App. 691, 384 S.E.2d 50 (1989), *aff'd*, 326 N.C. 588, 391 S.E.2d 187 (1990).

However, in *Michigan v. Long*, 463 U.S. 1032, 77 L. Ed. 2d 1201 (1983), the United States Supreme Court held that "if, while conducting a legitimate *Terry* search . . . the officer should discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." The courts of North Carolina have likewise consistently held that "in the conduct of the limited weapons search, contraband or evidence of a crime is of necessity exposed, the officer is not required by the Fourth Amendment to disregard such contraband or evidence of crime." *State v. Streeter*, 17 N.C. App. 48, 50, 193 S.E.2d 347, 348 (1972). Moreover, North Carolina has also extended the limits of the *Terry* pat-down and have held that "[w]hen an officer makes a lawful arrest of an occupant of an automobile and conducts a contemporaneous search of the automobile incident to that arrest, he may ask passengers to step out of the vehicle so he may complete his investigation." *State v. Adkerson*, 90 N.C. App. 333, 338, 368 S.E.2d 434, 437 (1988), quoting *State v. Collins*, 38 N.C. App. 617, 248 S.E.2d 405 (1978). " 'When there are reasonable grounds to order an occupant out of the car, then he may be subjected to a limited search for weapons when the facts available to the officer justify the belief that such an action is appropriate.' " *Id*. " 'The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.' " *Id*. quoting *Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909.

The above cases are justified by reference to the "plain view" doctrine, which generally allows an officer to seize evidence when the initial intrusion which brings the evidence into plain view is lawful, and it is immediately apparent to the police that the items observed constitute evidence of a crime, are contraband, or are otherwise subject to seizure. *State v. Church*, 110 N.C. App. 569, 430 S.E.2d 462 (1993); *see also Horton v. California*, 496 U.S. 128, 110 L. Ed. 2d 112 (1990).

The constitutional guarantee against unreasonable search and seizure does not apply where a search is not necessary, and where the contraband subject matter is fully disclosed to the eye and hand. *State v. Harvey*, 281 N.C. 1, 187 S.E.2d 706 (1972).

The plain view doctrine has now been expanded by the United States Supreme Court in *Minnesota v. Dickerson*, --- U.S. ---, 124 L. Ed. 2d 334 (1993). On facts remarkably similar to the case *sub judice*, the Court held that the "[plain view] doctrine has an obvious application by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search." *Id.* at ---, 124 L. Ed. 2d at 345.

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.

*Id.* at ---, 124 L. Ed. 2d at 346. "The seizure of an item whose identity is already known occasions no further invasion of privacy." *Id.* at ---, 124 L. Ed. 2d at 347. "Thus, the dispositive question . . . is whether the officer who conducted the search was acting within the lawful bounds marked by *Terry* at the time he gained probable cause to believe that the lump in respondent's jacket was contraband." *Id.*

In *Dickerson*, the officer conducted a *Terry* pat-down and felt a small, hard object wrapped in plastic in the defendant's pocket. He then formed the opinion that the object was crack cocaine, and then began "squeezing, sliding, and otherwise manipulating the contents of the defendant's pocket—a pocket which the officer already knew contained no weapon." *Id.* The Court stated that "[a]lthough the officer was lawfully in a position to feel the lump in respondent's pocket, because *Terry* entitled him to place his hands on respondent's jacket, . . . the incriminating character of the object was not *immediately apparent* to him." *Id.* at ---, 124 L. Ed. 2d at 348 (emphasis added). The Court concluded that the continuing search to determine specifically what was in the defendant's pocket was beyond the scope of the lawful weapons search.

Likewise in the case before us, while Officer Gregory was justified in conducting a limited pat-down of the defendant to determine whether the defendant was armed, once the officer concluded that there was no weapon, he could not continue to search or question the defendant in order to ascertain whether the plastic bag was indeed contraband. As the Supreme Court pointed out in *Dickerson*, "[w]here, as here, 'an officer who is executing a valid

STATE v. BEVERIDGE

[112 N.C. App. 688 (1993)]

search for one item seizes a different item,' this Court rightly 'has been sensitive to the danger . . . that officers will enlarge a specific authorization, furnished by a warrant or an exigency, into the equivalent of a general warrant to rummage and seize at will.' " *Id.* at ---, 124 L. Ed. 2d at 347, quoting *Texas v. Brown*, 460 U.S. 730, 75 L. Ed. 2d 502 (1983).

Officer Gregory's testimony indicates that he did not know that the bag contained contraband until he asked the defendant to turn out his pockets and show him the contents in his hands. He knew only that there was a cylindrical bulge in the pocket of the defendant's jeans, and that the bulge felt like a plastic baggie. He could not see any of the bag, but could only feel the contours through the defendant's clothing as a result of the pat-down. "[T]he officer's continued exploration of respondent's pocket after having concluded that it contained no weapon was unrelated to the sole justification for the search [under *Terry*] . . . the protection of the police officer and others nearby. It therefore amounted to the sort of evidentiary search that *Terry* expressly refused to authorize." *Id.* While the pat-down revealed that the defendant had a plastic baggie in his pocket, the officer's testimony at *voir dire* indicated that it was not *immediately apparent* to him that the baggie held contraband. Without some other exigency to justify the continued warrantless search of the defendant, he was no longer authorized under *Terry* and its progeny to invade the defendant's privacy.

We therefore hold that the cocaine seized from the defendant in this case was the fruit of a constitutionally impermissible search. Because the search for and the seizure of such evidence violated the defendant's Fourth Amendment rights, it should not have been admitted in any subsequent trial against him. For the reasons stated, the judgment below is vacated.

Vacated.

Judge WELLS concurs.

Judge McCRODDEN dissents in a separate opinion.

Judge McCRODDEN dissenting.

I respectfully dissent from the majority's conclusion that the trial court erred in denying defendant's motion to suppress evidence

**STATE v. BEVERIDGE**

[112 N.C. App. 688 (1993)]

of the cocaine seized from defendant because it was the fruit of a constitutionally impermissible search in light of *Minnesota v. Dickerson*, --- U.S. ---, 124 L.Ed.2d 334 (1993). In my opinion, *Dickerson* is not dispositive of the question raised by defendant's appeal.

The majority opinion concludes that Deputy Sheriff John Gregory's actions in questioning what defendant had in his pockets and in asking him to "rabbit-ear" them violated the Fourth Amendment of the United States Constitution. The majority bases this conclusion on a misapprehension of and, therefore, an erroneous reliance on, *Dickerson*, leading it to conclude that, because it was not immediately apparent to Deputy Gregory that the item in defendant's pocket was contraband, the deputy was not justified in continuing a warrantless search, to wit, questioning defendant and requesting that defendant "rabbit-ear" his pockets. This reliance is wrong because the questioning of defendant following the pat down search was *not* a search and hence not prohibited by the Fourth Amendment.

A close examination of the facts reveals several key differences between *Dickerson* and the case at hand. In both *Dickerson* and the instant case, law enforcement officers stopped suspects and performed protective pat down searches which failed to reveal any weapons. The officer in *Dickerson* testified that during the pat down search he felt a lump in the defendant's pocket, and the deputy in the case at hand testified that he "felt what appeared to be a plastic baggie in [defendant's] left front pant's pocket." At this point in the proceeding, however, the officer in *Dickerson* took a course clearly distinguishable from the one the deputy took in this case. In *Dickerson*, the officer determined that the lump in the defendant's pocket was contraband only after he "squeezed, slid, and otherwise manipulated the pocket's contents" during the pat down. *Id.* at ---, 124 L.Ed.2d at 340. After feeling the lump in Dickerson's pocket, the officer reached into it and pulled out a bag of cocaine. The manipulation of the defendant's pockets is what the United States Supreme Court found objectionable in *Dickerson*, when it stated that the police officer "overstepped the bounds of the 'strictly circumscribed' search for weapons allowed under *Terry*." *Id.* at ---, 124 L.Ed.2d at 347 (quoting *Terry v. Ohio*, 392 U.S. 1, 26, 20 L.Ed.2d 889, 908 (1968)).

In the case before us, there is no evidence that Deputy Gregory manipulated the defendant's pockets or continued a physical invasion of defendant's privacy, actions that would have amounted to overstepping the bounds of *Terry*. To the contrary, after frisking the defendant for weapons and feeling what appeared to be a plastic baggie in his pocket, the deputy terminated the *Terry* search. *Dickerson*, which refined *Terry*, simply is not an issue here.

In my view, the decisive question of this appeal is whether Deputy Gregory's actions subsequent to the pat down constituted a search. If no search is necessary or conducted, the constitutional guaranty of the Fourth Amendment is not applicable. *State v. Kinley*, 270 N.C. 296, 297, 154 S.E.2d 95, 96 (1967). A search implies both an examination of one's premises or person with a view to the discovery of contraband, and an exploratory investigation or quest. *State v. Reams*, 277 N.C. 391, 400, 178 S.E.2d 65, 70 (1970), *cert. denied*, 404 U.S. 840, 30 L.Ed.2d 74 (1971) (quoting *Haerr v. United States*, 240 F.2d 533, 535 (5th Cir. 1957)). When evidence is delivered to a police officer upon request and without compulsion or coercion, there is no search within the constitutional prohibition against unreasonable searches and seizures. *See State v. Reams*, 277 N.C. at 396, 198 S.E.2d at 68 and cases cited therein. From the facts of this case, it is apparent that no additional search was conducted after the pat down.

Deputy Gregory testified:

I *asked* [defendant] what he had in his pocket. [Defendant] said money and pulled out some money. . . . I told him that I could still see something in his jeans, they were tight to his body. I *asked* him to pull his pockets rabbit-ear out, he did. I noticed at that point that he was about — that he was about to start laughing. I then noticed he was palming something in his hand. I *asked* him what was in his hand. He turned it over. I saw a plastic bag with a small amount of white powder on it. The powder looked to be cocaine.

(Emphasis added). There is nothing in the record to dispute Deputy Gregory's testimony that, in response to his asking defendant what was in his pocket and requesting that he "rabbit-ear" his pockets, defendant voluntarily exhibited the package of cocaine. The record is devoid of any evidence that the deputy coerced the defendant into revealing the cocaine. *See Reams*, 277 N.C. at 400, 178 S.E.2d at 70. On the contrary, there was evidence that the

process by which defendant displayed the cocaine was free of coercion, intimidation, and force.

Moreover, defendant's intoxication did not negate the element of voluntariness when he exposed the cocaine to the officer. This Court, in *State v. Colson*, 1 N.C. App. 339, 343, 161 S.E.2d 637, 640 (1968), stated that "drunkenness provides the drinker with no constitutional cloak of privacy not available to his sober brothers." Nothing in the record indicates that the defendant's intoxication caused him to be incapable of voluntary and intelligent action.

Finally, I would point out that defendant could have exercised his constitutional right to refuse the deputy's request that he "rabbit-ear" his pockets and show him the contraband. Under constitutional scrutiny, such refusal would not have given the deputy probable cause either to search or arrest the defendant. *Cf. Florida v. Bostick*, 501 U.S. ---, ---, 115 L.Ed.2d 389, 398-90 (1991) (a suspect's refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure). The facts in the case at hand, however, provide no indication that the defendant felt that he could not refuse to display the cocaine or that he would have been arrested if he refused to do so.

I realize that my conclusion, that what transpired between Deputy Gregory and the defendant after the pat down was not a search, is contrary to the reasoning of the trial court. Even though I reject the trial court's analysis, I believe that it reached the correct result in this case and that the result should be affirmed. Defendant's attack on the legality of the search has required us to review the record to determine whether the search was lawful. In so doing, we may review the trial court's order for errors of law pertaining to the issue. *Cf. State v. Kirby*, 276 N.C. 123, 171 S.E.2d 416 (1970) (defendant's exception to the judgment presents the face of the record for review). If the trial court reached the correct result, *i.e.*, denial of defendant's motion to suppress, the ruling will not be disturbed even though the court may not have assigned the right reason for the order entered. *State v. Austin*, 320 N.C. 276, 290, 357 S.E.2d 641, 650, *cert. denied*, 484 U.S. 916, 98 L.Ed.2d 224 (1987).

In conclusion, because defendant voluntarily showed the cocaine to Deputy Gregory, I vote to uphold the denial of defendant's motion to suppress and to affirm the judgment.