An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1285

NORTH CAROLINA COURT OF APPEALS

Filed: 3 June 2014

STATE OF NORTH CAROLINA

v.                                    Brunswick County
                                      No. 12 CRS 50537-39
TRISTAN McNEIL


Appeal by Defendant from judgment and commitment entered 7 May 2013 by Judge Mary Ann Tally in Brunswick County Superior Court. Heard in the Court of Appeals 5 March 2014.

> *Attorney General Roy Cooper, by Associate Attorney General Gayle L. Kemp, for the State.*
>
> *Kimberly P. Hoppin for Defendant.*

DILLON, Judge.

Defendant Tristan McNeil appeals from a judgment entered upon his plea of no contest to one charge of trafficking in cocaine, contending that the trial court erred in denying his motion to suppress evidence obtained during a search of his person. We affirm.

I. Factual & Procedural Background

Defendant was arrested on 4 February 2012, when Officer

Ricky Smith of the Brunswick County Sheriff's Department found cocaine mixed with marijuana during a search of Defendant. On 21 May 2012, Defendant was indicted on a number of drug-related charges, including trafficking in cocaine by possession. On 3 May 2013, Defendant filed a motion to suppress the illegal drugs discovered by Officer Smith during his search. On 6 May 2013, a hearing on Defendant's motion was conducted before Superior Court Judge Mary Ann Tally. Judge Tally denied Defendant's motion to suppress on 7 May 2013.

Judge Tally's findings of fact, as recited in open court[1], tended to show the following. On 4 February 2012, police officers in Brunswick County established a checkpoint at the intersection of Old Shallotte Road and Union School Road for the purpose of checking for Chapter 20 motor vehicle violations, as well as other violations of law. At approximately 5 p.m., Officer Ricky Smith noticed Defendant's vehicle approaching the

---

[1] Judge Tally did not enter a written order, but instead announced the rationale for her decision to deny Defendant's motion from the bench. We have held that on consideration of a motion to suppress, the trial court's "findings and conclusions must be in the form of a written order unless (1) the trial court provides its rationale from the bench, and (2) there are no material conflicts in the evidence at the suppression hearing." *State v. Dahlquist*, __ N.C. App. __, __, 752 S.E.2d 665, 666 (2013) (citation and quotation marks omitted). In the present case, however, Defendant does not challenge the propriety of the trial court's decision to articulate its rationale in open court.

checkpoint from approximately 300 yards away. Officer Smith observed Defendant's vehicle abruptly make a left turn into a dirt driveway that led to a trailer. Officer Smith knew the occupants of the trailer and was distantly related to them.

Officer Smith left the checkpoint to investigate why Defendant's vehicle had turned into the driveway. Officer Smith proceeded to the driveway; he saw Defendant's vehicle parked near the trailer and Defendant walking towards the trailer. Officer Smith did not recognize Defendant, who was a large man wearing a long, untucked shirt over his jeans. Officer Smith noticed that Defendant's vehicle displayed a South Carolina tag.

Officer Smith called out to Defendant, asking him where he was coming from. Defendant responded that he was there to visit his mother. Officer Smith, as previously stated, knew the trailer occupants and thus knew that Defendant's mother did not live in the trailer. Ms. Holden, who lived in the trailer, came outside and informed Officer Smith that she had never seen Defendant before. At some point during the encounter, Ms. Holden told Officer Smith that there had been break-ins in the area.

Officer Smith conducted a pat-down of Defendant for safety, checking for weapons. Officer Smith asked Defendant whether he

had anything on him that he should know about. Defendant answered, "No," then volunteered to empty his pockets. Officer Smith instructed Defendant to place the contents of his pockets on the hood of Officer Smith's police car. Defendant reached into one of his pockets and pulled out a large amount of currency, which he placed on the hood of the police car. Defendant then reached again into one of his pockets, while turning away from Officer Smith. Officer Smith instructed Defendant not to turn away; however, Defendant continued to turn away, prompting Officer Smith to grab Defendant's shirt. Subsequently, Officer Smith noticed Defendant getting nervous and walking towards his own vehicle, leaving the currency on the police car hood. He instructed Defendant to come back, but Defendant did not do so. Eventually, Defendant complied with Officer Smith's commands to put his hands behind his back. Officer Smith noticed a large bulge still present in one of Defendant's pockets. He was unable to determine the contents of the pocket when he felt it from the outside. He reached into the pocket and pulled out cellophane material, which contained cocaine mixed with marijuana and another large sum of money.

Based on these findings, the trial court concluded, *inter alia*, that Officer Smith had possessed reasonable suspicion to

investigate Defendant's abrupt left-hand turn into the driveway in view of the police checkpoint; that Officer Smith had possessed reasonable suspicion to continue his investigation when Defendant lied about visiting his mother at the trailer; and that Officer Smith had acted reasonably when he reached into Defendant's pocket to determine the nature of the bulge that he had observed in that area.

Following the trial court's denial of his motion to suppress, Defendant entered a plea of no contest to the count of trafficking in cocaine by possession, preserving his right to appeal the court's denial of his motion to suppress. The remaining charges were dismissed as part of the plea arrangement. The trial court sentenced Defendant to a prison term of thirty-five to forty-two months and a fine of $50,000.00. Defendant appeals.

## II. Jurisdiction

Defendant has filed a petition for writ of certiorari with this Court, conceding a jurisdictional defect in his notice of appeal. Specifically, Defendant gave notice of appeal from the trial court's denial of his motion to suppress, but failed to give notice of appeal with respect to the judgment entered upon his guilty plea. We exercise our discretion, however, and,

pursuant N.C.R. App. P. 21(a)(1), address the merits of Defendant's appeal. *State v. McKoy*, 171 N.C. App. 636, 638, 615 S.E.2d 319, 320 (2005).

## III. Analysis

Defendant contends that the trial court erred in denying his motion to suppress the evidence found on his person without a search warrant. More specifically, Defendant contends that the search was in violation of his rights under the Fourth Amendment of the United States Constitution, in that the investigatory stop and ensuing search of his person was invalid under *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889 (1968).

"[T]he scope of appellate review of an order [regarding a motion to suppress] is strictly limited to determining whether the trial [court]'s underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the [court]'s ultimate conclusions of law." *Dahlquist*, ___ N.C. App. at ___, 752 S.E.2d at 666 (citation and quotation marks omitted) (alteration in original). After careful review of the trial court's findings and conclusions, we affirm.

## B. The Investigatory Stop

Defendant first challenges the validity of the

investigatory stop conducted by Officer Smith. Specifically, Defendant argues that the trial court failed to make findings sufficient to support the conclusion that Officer Smith had the reasonable suspicion necessary to conduct an investigatory stop of Defendant under the circumstances. We disagree.

Our Supreme Court has held that avoiding a police checkpoint on a public roadway may give rise to reasonable suspicion and justify a subsequent *Terry* search. *State v. Griffin*, 366 N.C. 473, 749 S.E.2d 444 (2013); *State v. Foreman*, 351 N.C. 627, 527 S.E.2d 921 (2000). In *Griffin*, as in this case, the defendant "approached a checkpoint marked with blue flashing lights." *Griffin*, 366 N.C. at 477, 749 S.E.2d at 447. Citing *Foreman* and *United States v. Smith*, 396 F.3d 579 (4th Cir. 2005), our Supreme Court confirmed that "this Court and the Fourth Circuit have held that even a legal turn, when viewed in the totality of the circumstances, may give rise to reasonable suspicion." *Griffin*, 366 N.C. at 477, 749 S.E.2d at 447.

In *Foreman*, our Supreme Court observed that while "a legal turn, by itself, is *not* sufficient to establish a reasonable, articulable suspicion, a legal turn in conjunction with other circumstances, such as the time, place and manner in which it is made, *may* constitute a reasonable, articulable suspicion which

could justify an investigatory stop." 351 N.C. at 631, 527 S.E.2d at 923 (emphasis in original). As in *Griffin*, the police officer in *Foreman* "observed a 'quick left turn' away from the checkpoint at the precise point where the driver of the vehicle would have first become aware of its presence." 351 N.C. at 630, 527 S.E.2d at 923. Our Supreme Court held

> that it is reasonable and permissible for an officer to monitor a checkpoint's entrance for vehicles whose drivers may be attempting to avoid the checkpoint, and it necessarily follows that an officer, in light of and pursuant to the totality of the circumstances or the checkpoint plan, may pursue and stop a vehicle which has turned away from a checkpoint within its perimeters for reasonable inquiry to determine why the vehicle turned away.

*Id.* at 632-33, 527 S.E.2d at 924.

In *Smith*, as in the present case, a police officer followed the defendant's vehicle after it turned down a private driveway in an apparent attempt to avoid a checkpoint, and upon entering the driveway, the officer found the vehicle parked. The Fourth Circuit Court of Appeals explained that the officer reasonably could have inferred that the defendant "was attempting to evade the police checkpoint" and upheld the reasonableness of the search. *Smith*, 396 F.3d at 585-87.

As our Supreme Court has explained,

> [r]easonable suspicion is a "less demanding standard than probable cause and requires a showing

considerably less than preponderance of the evidence." Only "'some minimal level of objective justification'" is required. This Court has determined that the reasonable suspicion standard requires that "[t]he stop . . . be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." Moreover, "[a] court must consider 'the totality of the circumstances—the whole picture' in determining whether a reasonable suspicion" exists.

*State v. Barnard*, 362 N.C. 244, 247, 658 S.E.2d 643, 645 (2008) (citations omitted).

In the present case, we believe that Officer Smith's observation of Defendant maneuvering his vehicle into a driveway and away from the police checkpoint, combined with the additional circumstances as set forth in the unchallenged portion of the trial court's findings, "constitute[d] [a] reasonable, articulable suspicion" that "justif[ied] an investigatory stop." *Foreman*, 351 N.C. at 631, 527 S.E.2d at 923. More specifically, upon observing Defendant turn into the driveway, Officer Smith engaged in the inquiry that our Supreme Court held reasonable in *Foreman*. Then, when questioned concerning his presence outside the trailer, Defendant informed Officer Smith that he was there to visit his mother, a statement Officer Smith knew to be false given his relationship with the occupants of that same trailer. We hold that, in light of these

circumstances, the trial court correctly determined that Officer Smith's investigatory stop of Defendant was justified.

## C. The Scope of the Search

Defendant next contends that, even if the investigatory stop was valid, Officer Smith's search of Defendant's person that ensued exceeded the scope permissible under *Terry*. We disagree.

The United States Supreme Court has held that a police officer's observation of a bulge in a defendant's clothing may permit the officer to conclude that the defendant is "armed and thus pose[s] a serious and present danger to the safety of the officer." *Pennsylvania v. Mimms*, 434 U.S. 106, 110–11, 54 L. Ed.2d 331 (1977). Moreover, in *United States v. Baker*, the Fourth Circuit explained that a pat-down search is not "the only permissible method of conducting a *Terry* search." 78 F.3d 135, 138 (4th Cir. 1996). Instead, "the reasonableness of a protective search depends on the factual circumstances of each case." *Id*.

We believe that the unchallenged findings of fact made by the trial court – for example, that Defendant was a large man; that Officer Smith could not discern whether the contents of one of Defendant's pockets included a weapon when he came in contact

with the bulge during his pat-down of Defendant; that Defendant only removed a single object from his pockets when he volunteered to empty his pockets; that Defendant turned away from Officer Smith while reaching into his pocket; that Defendant appeared extremely nervous and refused to obey Officer Smith's instructions until threatened by Officer Smith with a taser; and that Officer Smith was the only officer on the scene – were sufficient to sustain the trial court's conclusion that Officer Smith's search of Defendant was reasonable under *Terry*.

Defendant cites *State v. Beveridge*, 112 N.C. App. 688, 436 S.E.2d 912 (1993), in support of his contention that Officer Smith's search of the area where he felt a large bulge was unreasonable. Defendant's reliance on *Beveridge* is misplaced. In *Beveridge*, the police officer reached into a detainee's pocket after determining from a pat-down that the contents did not include a weapon, but rather a cylinder-shaped object that the officer suspected contained drugs. *Id.* at 696, 436 S.E.2d at 916. This Court concluded that the officer's actions were overly intrusive on grounds that the officer was no longer acting with the purpose of determining whether the detainee was armed with a weapon at the time he reached into the detainee's pocket. *Id.* In the present case, however, Officer Smith was

unable to determine whether the contents of Defendant's pocket included a weapon at the moment he came into contact with the bulge, after which Defendant exhibited furtive, evasive behavior, acted nervously and reached into the pocket himself while simultaneously turning away from Officer Smith. *See State v. Willis*, 125 N.C. App. 537, 543, 481 S.E.2d 407, 411 (1997). Accordingly, *Beveridge* is distinguishable and is of no help to Defendant in the present case.

## IV. Conclusion

For the foregoing reasons, we hold that the trial court did not err in denying Defendant's motion to suppress.

AFFIRMED.

Judges BRYANT and STEPHENS concur.

Report per Rule 30(e).